## NEW ORLEANS *v.* BENJAMIN.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE
FIFTH CIRCUIT.

No. 981. Submitted January 12, 1894. — Decided May 14, 1894.

When a suit does not really and substantially involve a dispute or contro-
versy as to the effect or construction of the Constitution of the United
States, upon the determination of which the result depends, then it is
not a suit arising under the Constitution.

Upon the bill and answer in this case no such dispute or controversy arose
as would give original jurisdiction to the Circuit Court of the United
States without regard to the diverse citizenship of the parties.

The act of the legislature of Louisiana repealing the act creating the Board
of Metropolitan Police and other acts in relation thereto, was, in itself,
a mere change of an instrumentality of municipal government, and as,
upon the record, it must be assumed that the assets of that board and
the remedies in respect thereof of those who held evidences of indebted-
ness issued by the board remained unaffected by the repealing act, the
act could not be attacked in this way as unconstitutional because it made
no specific provision for the payment of such indebtedness, on the
liquidation of the affairs of the board.

Whether this suit be regarded as seeking a decree against defendants as
on a creditors' bill, or as by analogy to garnishee process, it was, under
the pleadings, a suit to recover the contents of choses in action within
the meaning of the Judiciary Act of 1887 and 1888, and, as the bill con-
tained no averment that the suit could have been maintained by the
assignors, the jurisdiction of the Circuit Court cannot be sustained on
the ground of diverse citizenship.

THIS is a certificate from the United States Circuit Court
of Appeals for the Fifth Circuit, under section six of the
Judiciary Act of March 3, 1891, the statement and questions
of law so certified being as follows :

"The complainant, an alien, filed his bill of complaint in
the Circuit Court against the city of New Orleans and other
municipal corporations, citizens of the State of Louisiana,
alleging, among other things, as follows, viz. :

"'That by an act of the legislature of Louisiana (No. 74)
approved September 14, 1868, the parishes of Orleans, (includ-

ing the city of New Orleans,) Jefferson, and St. Bernard were territorially united in one district for the purpose of police government therein, called the "Metropolitan police district of New Orleans, State of Louisiana;" that the government of said district for police purposes was vested in a board of commissioners styled "the board of Metropolitan police."

"'That said board was required to appoint all the officers and employés of the police force required in said district, and their salaries, which were prescribed by the act, were required to be paid monthly ; that by said act and acts of said legislature supplementary to and amendatory thereof said board was required to make annually an estimate of the expenses of maintaining a police force in said district and to apportion the same to the several cities and parishes within said district, and said cities and parishes were required by said acts to promptly pay and to provide the means for promptly paying the amounts thus apportioned to them,' and they were authorized and required to raise the amount by levying taxes for that purpose.

"That said board of Metropolitan police, in obedience to the laws creating and governing the same, organized a Metropolitan police force in said district and appointed and employed the officers and members thereof, who entered upon their duties and rendered services under contracts therewith to be paid the salaries fixed by law for such employment, such contracts being made upon the faith of its revenues applicable to their payment being unimpaired.

"That said board annually made the estimates of the expenses of maintaining such police force and apportioned the same to the several cities and parishes in the district, and that large sums are due and unpaid on account thereof by the city of New Orleans and other corporations made defendants in the bill.

"That by the provisions of an act of said legislature approved February 27th, 1869, and subsequent acts, all warrants issued in payment of salaries of officers, employés, and members of the Metropolitan police and for the expenses of said board were made receivable for all parish and municipal

taxes and licenses within the limits of the Metropolitan police district and for all debts due or to become due to the parishes and cities within said district, not exceeding in any one year the amount of their respective apportionments for that year.

"'That by an act of said legislature (No. 35) approved March 31st, 1877, said act No. 74, of September 14th, 1868, establishing said Metropolitan police district; said act No. 44, of February 27th, 1869, making all warrants issued in payment of Metropolitan police salaries and expenses receivable for all municipal and parish taxes within the district; said act No. 94, of March 30th, 1870, requiring the several cities and parishes within the district to pay and to provide the means for the payment of their apportionments of the expenses of the board of Metropolitan police; said act No. 16, of March 24th, 1875, entitled "An act to enforce the payment by the city of New Orleans and the several cities and parishes of the Metropolitan police district of the apportionment made upon them by the board of Metropolitan police, and for other purposes," as well as all other acts amendatory of said above-enumerated acts or upon the same subject-matter, were repealed, and said board of Metropolitan police was abolished and no provision was made for the liquidation of its affairs or the payment of its debts.

"'That said repealing act was in violation of section 10, article 1, of the Constitution of the United States, in that it impaired the obligation of the contracts made by said board of Metropolitan police with its officers and employés and others to whom it was indebted, and who had contracted with and rendered services to said board upon the faith of said provisions of law for the enforced payment and collection of the sums due to it as aforesaid from the several cities and parishes within said district, out of which funds only they could be paid, and to that extent said act was and is null and void.'

"The bill further avers that complainant is the holder and owner of Metropolitan police warrants, certificates, and claims against said board of Metropolitan police, said warrants and certificates having been issued by said board for services rendered and supplies furnished, and said claims being for services

rendered and supplies furnished thereto under contracts there-
with, said warrants, certificates, and claims amounting to
$5032.90, and that other due and unpaid warrants and certifi-
cates issued by said board are outstanding, and sums are due
and owing by it for services rendered and supplies furnished
to it exceeding $200,000.

" And it is also averred —

" ' That the only assets of said board of Metropolitan police
at the time it was abolished were the amounts due to it by said
city of New Orleans, and by the other defendants as herein
stated; that the aggregate amount of said indebtedness to
said board largely exceeds the total amount of its debts and
liabilities; that law and equity require that the amount of said
assets should be ascertained, and the just proportion due by
each of the defendants adjusted, and that the liabilities of
said board of police be fixed and determined and paid out of
said assets, and if the same exceed the liabilities of the board,
that said defendants be required to pay their *pro rata* shares
thereof.'

" ' That said board of Metropolitan police was a body cor-
porate under the laws of its creation, and by the repeal of said
laws ceased to be, and had and has no representative or suc-
cessor against whom suit might have been or may now be
brought for the establishment of the demands of the complain-
ant herein, and he is remediless except in this honorable court,
where matters of this nature are cognizable and relievable;
wherefore he brings this his bill in behalf of himself and all
other creditors of said board similarly situated who may come
in and contribute to the expenses of this suit.'

" The prayer of the bill in substance is that an account be
taken ' of all the debts, liabilities, and unpaid dues of every
kind of said board of Metropolitan police, including the war-
rants, certificates, and claims of your orator and of all others
who may come in and avail themselves of the decree to be
made herein and contribute to the expense of this suit; that a
like account may be taken of the amount due by each of said
defendants to said board of Metropolitan police for the bal-
ances of their unpaid apportionments of police expenses, as

well as of all police taxes collected by them and withheld from said board, and that said defendants be decreed to pay into the hands of some discreet person, to be appointed receiver by this honorable court, their several *pro rata* shares of the amount so found to be due to creditors of said board of Metropolitan police, including all costs of the administration thereof, and that the funds thus realized be applied to the payment of your orator's said warrants, certificates, and claims, and of such other persons as may be creditors of said board and who shall come in and establish their claims, and also to the payment of interest thereon and all expenses of administration and costs.'

"The defendant, the city of New Orleans, demurred to the bill, assigning, among other causes of demurrer, the following:

"'That the complainant's said bill of complaint, in case the same were true, which this defendant does in nowise admit, contains not any matter of equity whereon this court can ground any decree or give the complainant any relief or assistance as against this defendant.

"'That the bill complains of the repeal by the legislature of Louisiana of the aforesaid acts organizing and relating to the Metropolitan police force and the Metropolitan police board, and by reason of said repeal the bill alleges the Metropolitan police board was abolished and no provision was made or now exists for the liquidation of the affairs or for the payment of the alleged debts of said board, and the bill calls upon this court to grant relief for the payment of said alleged debts of said Metropolitan police board; but this defendant shows that the only mode of payment of said alleged debts, if any, of the late Metropolitan police board, a political body for the administration of the police of the city, is by taxes to be levied for that purpose, and, if it be true, as asserted by said bill, that no provision now exists for the payment of said debts, this court has no power to direct the levy of taxes for said asserted debts or any power whatever to grant any relief in respect to the matters of which the bill complains.'

"The demurrer was overruled.

"Said defendant then filed an answer and, among other

things, averred as follows: 'Further answering, defendant admits that by the act of the legislature of Louisiana No. 35, of 1877, the various acts organizing the Metropolitan police board were repealed; but all the provision for the payment of said Metropolitan police was the levy of the Metropolitan police taxes authorized by law, and said taxes had already been levied far in excess of taxes that should have been imposed, and the repealing legislation did not interfere in any manner with the levy and application of said taxes, to the extent that they could be collected, to the payment of the legal obligations of said Metropolitan police board, and with this statement and a reference to said repealing act this defendant denies the allegation in the bill that, by such repealing legislation, no provision was made for the liquidation of the affairs of said board or payment of its debts.'

"'This defendant again affirms that said repealing act did not interfere in any manner with the means of payment of all lawful obligations of said board nor with the right of those who had made lawful contracts — that is, to the extent authorized by law with said board; and this defendant again refers to the illegal and void apportionments of said board, and to the alleged contracts made by it, far in excess of the means applicable to the support of the Metropolitan police, and far in excess of their power, and denies to be true that said repealing act was in violation of the Constitution of the United States or "impaired the obligation of the contracts of said board with its officers and employés, who had contracted with and rendered services to said board upon the faith of said provisions of law for the enforced payment and collection of the sums due to it from the several cities and parishes within said district," and denies that said act was null and void in any respect or to any extent.'

"Said answer also averred that the city was liable to said board only for such police taxes as she collected, and that she had fully accounted for all such collections, and denies that she is now making any such collections and that any such taxes are collectible.

"Issue being joined, the case was referred to a master to

take an account of the amounts due by the defendants to said board, and of its outstanding liabilities. He reported as due by the city of New Orleans on account of its apportionments a balance of $241,106.54 and an indebtedness of the board incurred on account of said city and still unpaid amounting to $123,963.06, besides interest thereon. Small amounts were found due by the other defendants and also by the board on their account.

"Prior to the decree a number of creditors of the board, some of whom were citizens of Louisiana, with leave of court intervened in the suit, made proof of their claims before the master, claimed the benefit of the decree, and prayed to be permitted to share in the distribution.

"Of the amount of claims proved before the master and covered by the decree the complainant, an alien, holds $5777.78; an alien intervenor holds $815.78; intervenors who are citizens of Louisiana hold $81,100.51, and intervenors whose citizenship does not appear hold $30,302.16. Other claims, amounting to $13,363.21, were proved before the master by persons whose citizenship does not appear and who have not intervened.

"And it appearing that complainant and intervenors were assignees of the certificates, warrants, and claims, of which they made proof before the master, and that their assignors were citizens of Louisiana, and there being no averment in the bill that the assignors might have sued thereon in the Circuit Court if no transfer thereof had been made, the city of New Orleans moved to dismiss the suit for want of jurisdiction in said court.

"The motion was denied and a final decree made requiring the defendants to pay their virile shares of the indebtedness of the board as reported by the master. From such decree an appeal was taken to this court, and the case came on to be heard upon the errors assigned; whereupon, the court desiring the instruction of the honorable the Supreme Court of the United States for the proper decision of the questions arising herein touching the jurisdiction of the Circuit Court, it is hereby ordered that the following questions and propositions

of law be certified to said Supreme Court in accordance with the provisions of section 6, of the act entitled 'An act to establish Circuit Courts of Appeals and define and regulate in certain cases the jurisdiction of the Circuit Court of the United States and for other purposes,' approved March 3, 1891, to wit :

" First. Does the case made by the bill alleging that the board of police has been abolished and left without successor or legal representative and no provision has been made for the application of its assets to the payment of its debts and the answer herein, constitute a suit in equity arising under the Constitution of the United States and within the jurisdiction of the Circuit Court of the United States for the Eastern District of Louisiana without regard to the diverse citizenship of the parties ?

" Second. The warrants and the certificates held by the complainant having been issued for services rendered and supplies furnished under contract with the board of Metropolitan police when the laws required said warrants and certificates to be received by the defendants in payment of all licenses, taxes, and other dues, and all such laws having been repealed by the legislature of Louisiana without making other provision for the redemption of said warrants and certificates, was this an impairment of the obligation of the contract in relation to such warrants and certificates within the meaning of article 1, section 10, of the Constitution of the United States ?

" Third. Do the pleadings show a suit to recover the contents of choses in action within the meaning of the Judiciary Act of 1887 and 1888, so as to preclude the complainant, as assignee, from suing in the Circuit Court of the United States to establish a fund out of which he, in common with other creditors of the late Metropolitan police board, may be paid *pro rata* upon their claims ?

" Fourth. Considering all the allegations in the bill of complaint and the provisions in the constitution and laws of Louisiana respecting the Metropolitan police board and the Metropolitan police warrants and certificates and the redemp-

tion and payment of said certificates, does the case show a liability on the part of the city of New Orleans to contribute to a fund for the payment of said warrants and certificates beyond its liability for taxes assessed and collected in pursuance of the apportionments made ? "

The Circuit Court of Appeals "further ordered that the bill of complaint and the demurrer and answer of the city of New Orleans thereto be made a part of the transcript certifying the aforesaid questions, together with the following sample copies of the warrants, certificates, pay-rolls and assignments forming the basis of complainant's demand, to wit :

"*Warrant Filed with and Part of Assignment.*
"(Copy.)
"Central department, Metropolitan police.
"(No. 10,253.)

"NEW ORLEANS, *May 18th*, 1874.

"Treasurer of the board Metropolitan police :

"Pay to the order of James Reilly, fifty $\frac{00}{100}$ dollars.

"By order of the board.

"$50.00.          (Signed)     E. PARKER, *Chief Clerk.*"

"*Certificate Filed with and Part of Assignment.*
"(Copy.)
"Central department, Metropolitan police.

"No. 4748.                                        $73.97.

"NEW ORLEANS, *Jan.* 13, 1876.

"This is to certify that the board of Metropolitan police is indebted to P. Moran, No. 22, first precinct, in the sum of seventy-three $\frac{97}{100}$ dollars, for salary for account of the month of December, 1875.

"(Signed)                    L. T. MURDOCK,
"*Treasurer Board Metropolitan Police.*

"The amount due as per this certificate will not be paid unless the certificate is delivered to the treasurer of the board."

Then followed form of pay-rolls, the one given being ap-

proved January 5, 1877, for forty-nine hundred and seventy-six $\frac{4}{100}$ dollars, and the bill, demurrer, and answer, which were set forth at length.

*Mr. William A. Maury*, *Mr. Henry C. Miller*, and *Mr. E. A. O'Sullivan* for the city of New Orleans.

*Mr. J. D. Rouse* and *Mr. William Grant* for appellees.

1. As to the first question

It seems to us that the bill and demurrer fully and fairly submitted to the Circuit Court whether the repealing statute and said act 49 of 1880 had not relieved the city of all liability to pay the balance of the apportionments due the police board, except as provided in said act 49. The issue was decisive of the case, and the court was bound to decide it one way or the other at the outset.

Whether a suit in the Circuit Court is one arising under the Constitution or laws of the United States for the purpose of original jurisdiction is determined by the questions involved. "If from them it appears that some right, privilege, or immunity, on which the recovery depends, will be defeated by one construction of the Constitution or laws of the United States, or sustained by the opposite construction, then the case is one arising under the Constitution or laws of the United States." *Cooke* v. *Avery*, 147 U. S. 375.

The bill in this case sets forth the claims of complainant and the enactment of the state laws impairing his rights, and the reason for coming into the Circuit Court for the relief prayed. The response of the defendant admits all the facts alleged, but asserts as matter of law that the assets of the debtor corporation have been withdrawn from his reach by the repealing act, and that his right of relief is now limited to the remedy provided for in act 49 of 1880. These issues are to be tested and decided by the Constitution of the United States.

Whether the repealing law and the act 49 of 1880 did or did not impair complainant's contract, is the question presented for decision. It is a Federal question which gave jurisdiction to the Circuit Court, no matter how it might be

determined. But if the jurisdiction depends upon a correct solution of the question, we submit that if the repealing act has the effect claimed for it by the demurrer and in argument here, it must be held to impair the contract rights of complainant. *Planters' Bank* v. *Sharp*, 6 How. 301; *Edwards* v. *Kearzey*, 96 U. S. 595; *Curran* v. *Arkansas*, 15 How. 304; *Hawthorne* v. *Calef*, 2 Wall. 10; *Fisk* v. *Jefferson Parish*, 116 U. S. 131; *Mumma* v. *Potomac Co.*, 8 Pet. 281.

A summary of the laws relating to the Metropolitan police board shows:

1. That all statutes on the subject were mandatory in their character and required the city of New Orleans and other municipalities composing the police district to pay the amount apportioned against them, and to levy and collect a sufficient tax to discharge that obligation.

2. That these statutes, up to 1874, made scrip issued by the board receivable for all taxes due to the municipalities, without any limitation, except that the municipalities should not be required to receive scrip for any one year in excess of the annual apportionment.

3. That act 33 of 1874 required taxes levied for these apportionments to be paid in cash; providing, however, that scrip issued prior to January 1, 1874, should be receivable for taxes due prior to that year, except for the interest, school, park taxes, etc., and in this respect depriving the scrip holders of the right to use them in payment of all taxes, as permitted by prior laws.

4. Act No. 35 of 1877 repealed all these laws, relieving the municipalities of the duty and obligation of paying the apportionments, and withdrawing the power of levying taxes to pay them, and leaving the creditors of the police board without a debtor whom they could sue, and providing no remedy for the application of the assets of the board to the payment of its debts.

5. Three years later act No. 49 of 1880 was passed, pursuant to a constitutional ordinance of the State, which made the scrip receivable only for the taxes levied for the police fund in the years 1874, 1875, 1876.

The defendant claims by demurrer, answer, and argument

that it was competent for the legislature to enact these laws, and that if they impaired the remedy of the scrip holders, said act 49 gave them a new and ample remedy.

On the other hand, complainant asserts that the statute of 1877 was in contravention of the Constitution of the United States, and that act 49 of 1880, so far as it is claimed by defendant to be an adequate remedy in lieu of those previously taken away, is itself an impairment of his contract.

As these contentions must be determined by a resort to the provisions of the Constitution of the United States, and are decisive of the rights of the parties, they clearly make a case arising under that Constitution, of which the Circuit Court had original jurisdiction.

II. As to the third question, this involves a further consideration of the jurisdiction of the Circuit Court. Its jurisdiction of this case is assailed on the ground that the complainant, although an alien, is assignee of the claims he holds, the assignors thereof being citizens of Louisiana, of which State the defendants are also citizens. Also on the ground that some of the intervenors are citizens of Louisiana, and that complainant's suit is really for their benefit.

The objection is founded upon the theory that the warrants and certificates held by complainant are choses in action, his title to which is derived through assignment by citizens of Louisiana; that he is suing to recover their contents, and that the exercise of jurisdiction is therefore prohibited by the act of March 3, 1887, which provides that the Circuit Court shall not " have cognizance of any suit except upon foreign bills of exchange to recover the contents of any promissory note or other chose in action in favor of any assignee . . . unless such suit might have been prosecuted in such court to recover said contents if no assignment or transfer had been made."

The contents of a contract, as a chose in action, are the rights created by it in favor of a party in whose behalf stipulations are made in it, which he has a right to enforce in a suit founded on the contract; and a suit to enforce such stipulations is a suit to recover such contents. *Corbin* v. *County of Black Hawk*, 105 U. S. 659.

Necessarily a suit to recover the contents must be brought against the party who made the stipulation, as in the case of a promissory note against the maker, or upon a bond against the obligor. In such case the assignee of the contract, note, or other chose in action, cannot sue in the Circuit Court, unless his assignor might have done so, because the suit is one to recover contents, and so within the exception of the statute. But this exception has never been extended to a case not clearly within it.

Thus it has been held not to apply to a suit by an assignee of a chose in action to recover possession of the thing in specie, or damages for its wrongful caption or detention. *Deshler* v. *Dodge,* 16 How. 622; *Ambler* v. *Eppinger,* 137 U. S. 480; *Bushnell* v. *Kennedy,* 9 Wall. 387.

The complainant's bill was brought not only in behalf of himself but of all other creditors similarly situated, not to recover contents, but to establish a fund out of which all should be paid *pro rata.* A suit to recover the contents of a chose in action is one to enforce the obligation thereof *in toto.* In this case complainant could have no decree for the deficiency, if the fund prove insufficient to pay him and all other creditors in full. The bill shows the necessity as well as propriety of proceeding as it does against the debtors of the board; the amounts owing by them constituting its sole assets, and the complainant being an alien, he was competent to sue in the Circuit Court.

The case of *Bean* v. *Smith,* 2 Mason, 252, decided by Judge Story, establishes his right to sue in that court, notwithstanding he is a creditor by assignment.

This case is quoted with approval in *Ober* v. *Gallagher,* 93 U. S. 206.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The first and third questions propounded relate to the jurisdiction of the Circuit Court, which was invoked on two grounds: (1) that the case was one arising under the

Constitution of the United States; and (2) on diverse citizenship.

1. When a suit does not really and substantially involve a dispute or controversy as to the effect or construction of the Constitution, upon the determination of which the result depends, then it is not a suit arising under the Constitution. *Shreveport* v. *Cole*, 129 U. S. 36 ; *Starin* v. *New York*, 115 U. S. 248, 257; *Gold Washing and Water Co.* v. *Keyes*, 96 U. S. 199.

The judicial power extends to all cases in law and equity arising under the Constitution, but these are cases actually and not potentially arising, and jurisdiction cannot be assumed on mere hypothesis. In this class of cases it is necessary to the exercise of original jurisdiction by the Circuit Court that the cause of action should depend upon the construction and application of the Constitution, and it is readily seen that cases in that predicament must be rare. Ordinarily the question of the repugnancy of a state statute to the impairment clause of the Constitution is to be passed upon by the state courts in the first instance, the presumption being in all cases that they will do what the Constitution and laws of the United States require, *Chicago & Alton Railroad Co.* v. *Wiggins Ferry Co.*, 108 U. S. 18 ; and if there be ground for complaint of their decision, the remedy is by writ of error under section 709 of the Revised Statutes. Congress gave its construction to that part of the Constitution by the twenty-fifth section of the Judiciary Act of 1789, and has adhered to it in subsequent legislation.

But assuming that such repugnancy might be so set up as to form an independent ground of jurisdiction in the Circuit Court, it becomes necessary, in order to dispose of the inquiry whether such a dispute or controversy was really involved here, to refer to certain legislation of the State of Louisiana.

By act No. 74 of 1868, (Acts La. 1868, 85,) the parishes of Orleans, Jefferson, and St. Bernard were united into a district, called "the Metropolitan Police District of New Orleans, State of Louisiana," and a board created, styled the "Board of Metropolitan Police," upon which were conferred the

powers and duties pertaining to police government and discipline in that district, with power to issue warrants and certificates for the payment of the police and other expenses. These expenses were to be borne by the cities, towns, and parishes of the district, and apportionments or estimates thereof were to be made annually by the board against each of the cities and parishes, which were to be " binding upon the respective cities and towns interested therein," and the cities, towns, and parishes were empowered and directed to annually levy and collect taxes to raise the sums of money so estimated and apportioned, to be paid over to the state treasurer and constitute a fund to be paid out on warrants as provided.

By act No. 44 of 1869, (Acts La. 1869, 42,) and act No. 92 of 1869, amending and reënacting the original act, (Acts La. 1869, 92,) warrants issued in payment of the salaries of officers, employés, and members of the Metropolitan police in accordance with act No. 74 of 1868 were made receivable for all parish and municipal licenses and taxes within the limits of the Metropolitan police district, provided the aggregate so received in each current year should not exceed the amount of the apportionment for that year.

By act No. 41 of 1870, (Acts La. 1870, 74,) all warrants, checks, and orders issued in payment of the salaries of Metropolitan police, and all warrants, checks, and orders issued, or that might thereafter be issued, for the supplies and expenses of the board, were made receivable for all police and municipal taxes and debts to become due for the police of New Orleans, Jefferson, and Carrollton, provided that the aggregate of such warrants, checks, or orders so received in each current year should not exceed the apportionment.

By act No. 33 of 1874, (Laws La. 1874, sec. 4, pp. 68, 70,) it was enacted, among other things, that all Metropolitan police taxes should be collected in cash, and that it should be unlawful to receive in payment for said taxes any warrants of indebtedness of any kind whatever, provided that warrants and certificates issued prior to January 1, 1874, should still be received for taxes due for the years prior to that date.

In 1875, (Laws La. 1875, 35, No. 16,) an act was passed, to

the effect that the total amount of apportionments should be divided into twelve equal parts, and that weekly settlements of taxes collected should be made, and that, whenever the city of New Orleans or any city or parish making part of the police district should fail to pay the full amount of its *pro rata* share for any month, the tax bills should be transferred to the Metropolitan police board for collection.

By act No. 35, passed at an extra session of the legislature in 1877, and approved March 31, (Acts La. Ex. Sess. 1877, p. 57,) the acts of 1868, 1869, 1870, and 1875, above referred to, and other acts upon the subject, were repealed, and the police system transferred to the city.

It was ordained by the constitutional convention of 1879 " that all taxes and licenses due any parish or municipal corporation prior to January 1, 1879, may be payable in any valid warrants, scrip or floating indebtedness of said parish or municipal corporation, except judgments." (Acts La. 1880, Constitution, etc., 68.)   And by act number 49 of 1880, (Laws La. 1880, 48,) it was enacted that all parish or municipal corporations should "receive for all taxes and licenses due said parish or municipal corporations prior to January 1, 1879, all valid warrants, scrip or evidence of indebtedness of said parish or municipal corporations, except judgments, without any discrimination as to what year said warrants, scrip or evidence of indebtedness shall have been issued, *provided*, that all valid Metropolitan police warrants or scrip for the years 1874, 1875, and 1876 shall be receivable only for that portion of the tax levied for the Metropolitan police fund and no other, without any discrimination as to the year in which said warrants were issued or said taxes levied."

This bill was framed upon the theory that the city of New Orleans, the city of Kenner, and certain parishes were debtors for the amount of the apportionments as to each of them made by the police board during the eight years of its existence, (from 1869 to 1876 inclusive,) and that there was a large balance due on said apportionments which constituted a fund for distribution among the creditors of that board.   The bill stated that the assets of the board at the time it was abolished " were

the amounts due to it by said city of New Orleans and by the other defendants as herein stated," and that "the aggregate amount of such indebtedness to said board largely exceeds the total amount of its debts and liabilities." It was also, however, averred that the city of New Orleans, "annually, during the whole period of the existence of said board, included in her budget of expenditures the amount thus apportioned to her, and in pursuance of said authority, levied taxes for the purpose of paying the same;" and "has from day to day and from year to year, ever since the passage of the repealing act of March 31, 1877, aforesaid, continued to collect the taxes levied as aforesaid, for the purpose of paying the apportionments of said city for police expenses, as aforesaid made, and notified thereto; and is now making such collections and enforcing the payment of taxes levied for that purpose, and now has a large sum of money thus realized, which is applicable to the payment of said city's indebtedness to said board of police, and ought to be distributed among the creditors of said board in reduction of their claims, including those of your orator."

The prayer of the bill was that an account be taken of the debts, liabilities, and unpaid dues of every kind of said board of Metropolitan-police; that an account be taken of the amount due by each of the defendants to the board "for the balances of their unpaid apportionments of police expenses, as well as of all police taxes collected by them and withheld from said board;" that a receiver be appointed, to whom the defendants be decreed to pay their several *pro rata* shares of the amount found to be due to creditors of the board, including costs; and that the funds thus realized be applied to the payment of complainant's warrants, certificates, and claims, and of such other persons as may be creditors of the board, and who should come in and establish their claims; and also to the payment of interest, expenses, and costs. The bill averred that, by act No. 35 of 1877, acts No. 74 of 1868; No. 44 of 1869; No. 94 of 1870; and No. 16 of 1875, and other acts not enumerated were repealed, and the eleventh paragraph of the bill contained the allegation upon which the contention rested that the suit was one arising under the Constitution of the United States, it

being averred : " That said repealing act was in violation of
section 10, article 1, of the Constitution of the United States,
in that it impaired the obligation of the contracts made by said
board of Metropolitan police, with its officers and employés
and others, to whom it was indebted, and who had contracted
with and rendered services to said board, upon the faith of said
provisions of law for the enforced payment and collection of
the sums due to it as aforesaid, from the several cities and
parishes within said district, out of which funds only they could
be paid, and to that extent said act was and is null and void."

The city of New Orleans demurred to the bill for want of
equity; because the city had never been liable as a debtor
directly upon the apportionments ; and, because, so far as the
payment of the warrants and certificates was enforceable
through the levy of taxes, such levy, if needed, could not be
directed in this proceeding.   The demurrer was overruled and
the city answered.   The answer denied that the act of 1877
either changed or attempted to change or affect in any manner
or degree the rights or remedies of the holders of the warrants
and certificates ; denied that the apportionments had ever been
debts of the city, and averred that they were designed simply
as the basis on which the city was to levy the Metropolitan
police taxes ; denied that tax levies already made or the means
of collection were interfered with, and maintained that under
the Metropolitan police acts its only liability was for taxes
collected, of which it had then none in its hands.

The jurisdiction in equity in this case is found in the inade-
quacy of the remedy at law, either because the rights claimed
could not be enforced at law or because they could not be
administered in that forum.   The bill was manifestly framed
to bring the case within the class in which receivers are ap-
pointed to collect the assets and pay the creditors of a dissolved
corporation. *Broughton* v. *Pensacola*, 93 U. S. 266, 268;
*Meriwether* v. *Garrett*, 102 U. S. 472, 527.   Indeed, it was
expressly averred that the state courts had proceeded upon
that principle in respect of similar warrants and certificates,
and reference was made in terms to a decision of the Supreme
Court of Louisiana in that behalf.   *Harrison* v. *City of New*

*Orleans,* 40 La. Ann. 509. The contention was that the
holders of these warrants had a right to bring an action at
law against the board of police to recover thereon, and that
the dissolution of the board left the complainants without
remedy except in a court of equity, judgment and execution
at law not being required because impossible by reason of the
dissolution of the board. Therefore the court in chancery
was appealed to to lay hold of the assets of the board as in the
nature of a trust fund and apply them to the payment of the
claims. Those assets, as shown by the bill, were the appor-
tionments, the tax levies, and the taxes collected. These were
the means provided by law for the payment of debts created
by the board, and if they were left unaffected by the repeal-
ing act the alleged impairment had no basis to rest on. That
act was essentially a mere change of an instrumentality of
municipal government. It abolished the police organization
established in 1868, and vested in the city the function of
maintaining its own police. This legislation was not in con-
travention of the Constitution of the United States, and was
enacted in the exercise of the undisputed power of the State
in that regard. In making the change no obligation rested
on the State to create an independent and corporate successor
of the board or to provide for the application of its assets to
the payment of its debts if existing laws were ample to effect
that purpose. In that view the city of New Orleans remained
for all purposes, so far as creditors were concerned, the repre-
sentative of the board, and if the city were under a liability
to pay the apportionments in cash, it was not absolved from
that liability by the dissolution of the board. Although the
creditors could not avail themselves of the instrumentality of
the board to sue for the apportionments, (if that could ever
have been done,) still, as those apportionments had all been
made and taxes had been levied and were in course of collection
to pay them, or so much thereof as was needed to pay the
warrants and certificates, the act of 1877 left the city of New
Orleans to respond as before to the creditors in reference
thereto, and the remedies to which they could resort were
quite as efficient as they ever had been.

In *New Orleans* v. *Gaines' Administrator*, 131 U. S. 191, it was held that under the jurisprudence prevailing in Louisiana a creditor might exercise the right of action of his debtor, a right analogous to the garnishee or. trustee process in some States, and that this right could be enforced in a Federal court by a suit in equity on the principle of subrogation. But if this bill could be maintained on the doctrine therein recognized, or if the equitable principle of apportionment as between parties charged with a common burden were applicable as justifying equity interposition, the result on the point under consideration would be the same. Jurisdiction could not be obtained upon the bare averment of an anticipation that the city might rely on the repealing act as wiping out apportionments, tax levies and tax collections, and that the state courts would so decide. And the bill made no such specific averment, with which, indeed, many of its allegations were wholly inconsistent; while the defence of the city not only rested on no such ground, but the answer denied that the repealing act was susceptible of that construction or could be given that effect.

This would be equally true if, as suggested by counsel for the city, the board could never have been treated as a debtor, (unless it had collected taxes under act No. 16 of 1875, and retained them,) inasmuch as it had nothing to do with raising the sums apportioned to the local authorities, upon whom alone the duty was devolved to accomplish that through the exercise of the power of taxation, and the holders of warrants and certificates could from the first only have resorted to the police fund created through the medium of the annual apportionments.

In any aspect, the decision of the questions involved did not depend on the Federal Constitution. The construction or application of that instrument in one way would not defeat complainants, nor in another sustain them.

We are not dealing with a writ of error to review the final judgment of the highest court of a State in a suit wherein the validity of a statute of the State was drawn in question on the ground of repugnancy to the Constitution of the United States

.and the decision was in favor of its validity, but with the original jurisdiction of the Circuit Court, sought to be sustained on the ground that the cause of action arose under and was dependent upon the Constitution.

We are of opinion that the case made upon bill and answer did not really and substantially involve a dispute or controversy as to the effect or construction of the Constitution, upon the determination of which the result of the suit depended. Reference is made in the argument to the fact that the city filed a demurrer which was overruled, but the first question is confined to the case on bill and answer, and, moreover, the filing of the demurrer could not, under the circumstances, give jurisdiction to the Circuit Court, if it did not otherwise exist.

This conclusion covers the second question, which specifically inquires whether there was an impairment of the obligations of the contract arising upon the warrants and certificates by reason of the repeal of laws making them receivable in payment of licenses, taxes, and other debts. Of course there was no such impairment by the act of 1877, if that act left in force substantially the mode of payment of warrants provided by existing laws, and the bill did not attack act No. 33 of 1874, which suspended the tender of warrants and certificates for taxes except for the years prior to January 1, 1874, while under the ordinance of 1879, by act No. 49 of 1880, the police warrants or scrip for 1874, 1875, and 1876 were made receivable for police taxes without discrimination as to the year in which the warrants were issued or the taxes levied.

The bill did not claim the right assumed by the second question to have been taken away; but it was insisted that the warrants and certificates were payable "in cash," and it is argued that the act of 1880 was itself an impairment in making them receivable for taxes, which might restrict their payment in money. The difficulty with this second question is that the bill does not seek to compel the city to receive the warrants and certificates for taxes; but on the other hand, demands that they be paid in cash under the theory that the

city owes the amount of the apportionments, or has taxes collected on hand, so that no dispute or controversy as to the receivability of the warrants and certificates, determinative of the case, was involved.

The Circuit Court cannot be given jurisdiction by the suggestion of the impairment of a contract in respect of which the complainant seeks no relief, and there is here no averment raising such an issue.

2.  We have seen that the ground of equitable cognizance relied on is that the holders of these warrants and certificates had the right to bring an action at law against the board of police to recover thereon, and that the dissolution of the board left the complainants without remedy, except in a court of equity, judgment and execution at law not being required because impossible by reason of the dissolution of the board. It is insisted that the city stands in the position of a debtor for taxes collected on police board apportionments and for the amount of the apportionments themselves, so far as outstanding.  If this were so, and the police board were still in existence and liable to suit, then complainants would be obliged to recover judgment against the board and proceed against the city by way of creditor's bill to enforce the collection.  Granting that this could be done without judgment after and because the board had ceased to exist, nevertheless the claims of complainants must be established under the bill precisely as they would have to be in an action at law.  Although it is ingeniously said that the suit is one to "establish a fund," this does not change the fact that it is a suit to recover on the warrants and certificates, and then enforce their payment by a decree over against the city.   The establishment of a fund is, in this instance, only another name for the ascertainment of an indebtedness of the city to the board, available to the creditors of the board, after their claims as such are judicially determined.

By the first section of the act of March 3, 1887, c. 373, 24 Stat. 552, amendatory of the act determining the jurisdiction of Circuit Courts of the United States, as corrected by the act of August 13, 1888, c. 866, 25 Stat. 433, no Circuit or District

Court has cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made.

This provision was taken from the eleventh section of the Judiciary Act of 1789, and carried forward into section 629 of the Revised Statutes, and was designed to prevent the evasion of the discrimination in respect of suits between citizens of the same State and suits between citizens of different States, established by the Constitution and laws of the United States.

It appears in the act of March 3, 1875, c. 137, 18 Stat. 470, in somewhat different phraseology, and the restriction as to suits on promissory notes was removed; but it was restored by the act of 1887.

In *Sheldon* v. *Sill*, 8 How. 441, it was held under the act of 1789 that the endorsee of a negotiable promissory note, secured to the payee by a mortgage, could not sue in the courts of the United States to foreclose the mortgage, unless the mortgagee could; but this was necessarily ruled otherwise under the act of 1875. *Tredway* v. *Sanger*, 107 U. S. 323.

As remarked by Mr. Justice Blatchford in *Corbin* v. *County of Black Hawk*, 105 U. S. 659, 665, "the contents of a contract, as a chose in action, in the sense of section 629, are the rights created by it in favor of a party in whose behalf stipulations are made in it which he has a right to enforce in a suit founded on. the contract; and a suit to enforce such stipulations is a suit to recover such contents." In that case it was held that a suit to compel the specific performance of a contract, or to enforce its other stipulations, is a suit to recover the contents of a chose in action, and not maintainable in the Circuit Court by an assignee, if it could not have been prosecuted there by the assignor, had no assignment been made.

In *Shoecraft* v. *Bloxam*, 124 U. S. 730, 735, it was said by Mr. Justice Field that the terms used in the statute "were designed to embrace the rights the instrument. conferred which were capable of enforcement by suit." And see *Plant Investment Co.* v. *Key West Railway Co.*, 152 U. S. 71.

In *Walker* v. *Powers*, 104 U. S. 245, it was held that the assignee of a judgment founded on contract could not maintain a suit thereon in a court of the United States unless such a suit might have been prosecuted there if an assignment had not been made. *Mississippi Mills* v. *Cohn*, 150 U. S. 202.

The facts in *Ober* v. *Gallagher*, 93 U. S. 199, were these: Thompson, a citizen of Louisiana, purchased from Fleming, a citizen of Arkansas, a plantation situated in Arkansas and gave his notes for the purchase price, secured by a lien reserved in the conveyance, which notes Fleming transferred to Gallagher, a citizen of Louisiana. Gallagher afterwards sued Thompson in a court of Louisiana and recovered judgment. At the time of the purchase there was a judgment in Arkansas against Fleming upon which the lands were sold and conveyed to Ober, to whom Thompson also conveyed them. Gallagher afterwards filed his bill against Ober, a citizen of Arkansas, and Thompson, who had become a citizen of Tennessee, praying that the land might be subjected, under the lien reserved in the deed of Fleming to Thompson, to the payment of his judgment. Fleming at the time of the commencement of the suit had also become a citizen of Tennessee, and it was objected that, as Fleming and Thompson had both become citizens of Tennessee and therefore Fleming could not sue Thompson in the courts of the United States, Gallagher could not maintain the suit; but this court held that Gallagher, a citizen of Louisiana, was entitled to enforce the lien on the land, in Arkansas, against Ober, a citizen of Arkansas, and Thompson, a citizen of Tennessee, in collection of the judgment in which the note had become merged.

Mr. Justice Story in *Bean* v. *Smith*, 2 Mason, 252, held that the Circuit Court had jurisdiction on the ground of diverse citizenship in a suit in equity brought by a judgment creditor to set aside conveyances made after suit commenced, and a few days before the term at which judgment was expected to be obtained, in fraud of such creditor, although the judgment was recovered in the state court on a negotiable chose in action on which before judgment a suit could not have been maintained in the Circuit Court. But there, as Mr. Justice Story

observed, the right to sue the fraudulent grantees was not a right which had vested in another person and passed to complainant by assignment; and as to the fraudulent grantor the right was a new right growing out of a direct judgment between the parties and a fraud injurious to complainant, which had been devised to avoid the satisfaction of that judgment.

The case before us is not of that character. If the board had not been abolished, judgment could not have been recovered against it by complainants in the Circuit Court; and if a judgment had been recovered by them in the state court, a creditor's bill would have been merely ancillary to the judgment, and could not have been entertained in the Circuit Court as an original bill. Upon the facts appearing in this record, the assignees would have acquired no new and independent right of recovery, by reason of the judgment, not possessed by the assignors. The board being abolished, recovery of a judgment was dispensed with, but the establishment of the claims was still required as the basis for further relief, and that relief involved nothing more than recovery over, or a direct decree within the principles of *New Orleans* v. *Gaines' Admr., supra,* analogous to judgment on garnishee process. The suit must, therefore, be regarded as a suit to enforce the payments of the warrants and certificates, and as such, a suit to recover their contents, and this is so on any other ground of equity jurisdiction which has been suggested.

In our judgment the pleadings show a suit to recover the contents of choses in action, and, as the bill contained no averment that it could have been maintained by the assignors, if no assignments had been made, (from the statement accompanying the certificate it appears affirmatively that it could not,) the jurisdiction of the Circuit Court cannot be sustained on the ground of diverse citizenship.

*The first question is answered in the negative, and the third in the affirmative, and it will be so certified.*

Mr. Justice White took no part in the consideration and decision of this case.