## BENJAMIN v. CITY OF NEW ORLEANS.

### (Circuit Court, E. D. Louisiana. January 20, 1896.)

### No. 11,983.

JURISDICTION—DIVERSE CITIZENSHIP.

In a suit by an assignee of a chose in action "to recover the contents" thereof, it is not enough for plaintiff to allege in his complaint that his assignor was a citizen of a different state from defendant when he acquired such chose in action, but he must allege the existence of such diverse citizenship of the assignor and defendant at the time of bringing the suit.

Action by H. W. Benjamin against the city of New Orleans.

Rouse & Grant, for complainant.

Branch K. Miller, for defendant.

PARLANGE, District Judge. The mandate of the court of appeals to this court reverses the judgment of this court heretofore rendered herein by my predecessor and directs the dismissal of the bill unless, by proper amendment and in accordance with the views expressed by the supreme court in this case, the jurisdiction of this court be made to appear affirmatively. The complainant has amended his bill by averring that the persons in whose favor the claims accrued, and to whom the certificates were issued, are now, and were on February 9, 1891 (the date of the filing of the bill), citizens of states other than the state of Louisiana, and competent, as such citizens, to maintain suit in this court against the defendants for the recovery of the indebtedness represented by the certificates, if no assignment or transfer thereof had been made. The states of which the original certificate holders are averred to have been citizens at the time of the filing of the bill, are not named. Complainant's counsel referred in argument to a list of the certificate holders filed with the bill as Exhibit A, but that list furnishes no information whatever as to the states of which the certificate holders were citizens; and if any inference is to be drawn from the list, it is that the certificate holders were citizens of Louisiana.

In this case four questions were submitted to the supreme court by the court of appeals, to wit (153 U. S. 418, 14 Sup. Ct. 905):

"First. Does the case made by the bill, alleging that the board of police has been abolished, and left without successor or legal representative, and no provision has been made for the application of its assets to the payment of its debts, and the answer herein, constitute a suit in equity arising under the constitution of the United States and within the jurisdiction of the circuit court of the United States for the Eastern district of Louisiana, without regard to the diverse citizenship of the parties?

"Second. The warrants and the certificates held by the complainant having been issued for services rendered and supplies furnished under contract with the board of metropolitan police, when the laws required said warrants and certificates to be received by the defendants in payment of all licenses, taxes, and other dues, and all such laws having been repealed by the legislature of Louisiana, without making other provision for the redemption of said warrants and certificates, was this an impairment of the obligation of the contract in relation to such warrants and certificates, within the meaning of article 1, § 10, of the constitution of the United States?

"Third. Do the pleadings show a suit to recover the contents of choses in action within the meaning of the judiciary act of 1887 and 1888, so as to preclude the complainant, as assignee, from suing, in the circuit court of the United States, to establish a fund out of which he, in common with other creditors of the late metropolitan police board, may be paid pro rata upon their claims?

"Fourth. Considering all the allegations in the bill of complaint, and the provisions in the constitution and laws of Louisiana respecting the metropolitan police board and the metropolitan police warrants and certificates, and the redemption and payment of said certificates, does the case show a liability on the part of the city of New Orleans to contribute to a fund for the payment of said warrants and certificates beyond its liability for taxes assessed and collected in pursuance of the apportionments made?"

The first question was answered in the negative; the third, in the affirmative; and while the second question was not answered directly, the language of the supreme court (153 U. S. 429, 431, 432, 14 Sup. Ct. 905) makes it clear that, if the court had deemed it neces-

sary to directly answer the second question, the court would have answered it in the negative. The fourth question was, not answered.

The grounds of equitable cognizance relied upon in this case were, after the citation of authorities believed by complainant's counsel to be applicable, set out in the brief of complainant's counsel, filed in the supreme court, as follows:

"The destruction of the board of police by the repealing act deprived its creditors of their action at law against it for the enforcement of their demands, and left them without remedy, except in a court of equity, which * * * 'will lay hold of its property and administer it' for their benefit. Judgment at law and fruitless execution are not required, because impossible in the absence of an existing debtor. * * * And it has been held by this court [the supreme court] that, by the French jurisprudence which prevails in Louisiana, a creditor may exercise the right of action of his debtor, and that 'the right thus claimed for the creditor may very properly be pursued in a suit in equity, since it could not be pursued in an action at law in the courts of the United States, and all existing rights, in any state of the Union, ought to be suable in some form in those courts.' City of New Orleans v. Gaines' Adm'r, 131 U. S. 191–213, 9 Sup. Ct. 745."

The supreme court distinctly states that the above are the grounds of equitable cognizance relied upon. I read from the opinion (153 U. S., at page 428 et seq., 14 Sup. Ct. 905):

"The jurisdiction in equity in this case is found in the inadequacy of the remedy at law, either because the rights claimed could not be enforced at law, or because they could not be administered in that forum. The bill was manifestly framed to bring the case within the class in which receivers are appointed to collect the assets and pay the creditors of a dissolved corporation. Broughton v. Pensacola, 93 U. S. 266, 268; Meriwether v. Garrett, 102 U. S. 472, 527. Indeed, it was expressly averred that the state courts had proceeded upon that principle in respect of similar warrants and certificates; and reference was made, in terms, to a decision of the supreme court of Louisiana in that behalf. Harrison v. City of New Orleans, 40 La. Ann. 509, 4 South. 133. The contention was that the holders of these warrants had a right to bring an action at law against the board of police to recover thereon, and that the dissolution of the board left the complainants without remedy except in a court of equity; judgment and execution at law not being required, because impossible, by reason of the dissolution of the board. Therefore, the court in chancery was appealed to to lay hold of the assets of the board as in the nature of a trust fund, and apply them to the payment of the claims. Those assets, as shown by the bill, were the apportionments, the tax levies, and the taxes collected. These were the means provided by law for the payment of debts created by the board, and if they were left unaffected by the repealing act, the alleged impairment had no basis to rest on. That act was essentially a mere change of an instrumentality of municipal government. It abolished the police organization established in 1868, and vested in the city the function of maintaining its own police. This legislation was not in contravention of the constitution of the United States, and was enacted in the exercise of the undisputed power of the state in that regard. In making the change, no obligation rested on the state to create an independent and corporate successor of the board, or to provide for the application of its assets to the payment of its debts, if existing laws were ample to effect that purpose. In that view, the city of New Orleans remained, for all purposes, so far as creditors were concerned, the representative of the board; and if the city were under a liability to pay the apportionments in cash, it was not absolved from that liability by the dissolution of the board. Although the creditors could not avail themselves of the instrumentality of the board to sue for the apportionments (if that could ever have been done), still, as those apportionments had all been made, and taxes had been levied, and were in

course of collection to pay them, or so much thereof as was needed to pay the warrants and certificates, the act of 1877 left the city of New Orleans to respond as before to the creditors in reference thereto, and the remedies to which they could resort were quite as efficient as they ever had been. In New Orleans v. Gaines' Adm'r, 131 U. S. 191, 9 Sup. Ct. 745, it was held that, under the jurisprudence prevailing in Louisiana, a creditor might exercise the right of action of his debtor,—a right analogous to the garnishee or trustee process in some states,—and that this right could be enforced in a federal court by a suit in equity, on the principle of subrogation. But if this bill could be maintained on the doctrine therein recognized, or if the equitable principle of apportionment, as between parties charged with a common burden, were applicable, as justifying equity interposition, the result on the point under consideration would be the same. Jurisdiction could not be obtained upon the bare averment of an anticipation that the city might rely on the repealing act as wiping out apportionments, tax levies, and tax collections, and that the state courts would so decide. And the bill made no such specific averments, with which, indeed, many of its allegations were wholly inconsistent; while the defense of the city not only rested on no such ground, but the answer denied that the repealing act was susceptible of that construction, or could be given that effect. This would be equally true if, as suggested by counsel for the city, the board could never have been treated as a debtor (unless it had collected taxes under Act No. 16 of 1875, and retained them), inasmuch as it had nothing to do with raising the sums apportioned to the local authorities, upon whom, alone, the duty was devolved to accomplish that through the exercise of the power of taxation; and the holders of warrants and certificates could, from the first, only have resorted to the police fund created through the medium of the annual apportionments."

I read further from the opinion of the supreme court (153 U. S. 432, 14 Sup. Ct. 905):

"We have seen that the ground of equitable cognizance relied on is that the holders of these warrants and certificates had the right to bring an action at law against the board of police to recover thereon, and that the dissolution of the board left the complainants without remedy, except in a court of equity; judgment and execution at law not being required, because impossible, by reason of the dissolution of the board. It is insisted that the city stands in the position of a debtor for taxes collected on police board apportionments, and for the amount of the apportionments themselves, so far as outstanding. If this were so, and the police board were still in existence, and liable to suit, then complainants would be obliged to recover judgment against the board, and proceed against the city by way of creditors' bill to enforce the collection. Granting that this could be done without judgment after and because the board had ceased to exist, nevertheless the claims of complainants must be established under the bill precisely as they would have to be in an action at law. Although it is ingenuously said that the suit is one to 'establish a fund,' this does not change the fact that it is a suit to recover on the warrants and certificates, and then enforce their payment by a decree over against the city. The establishment of a fund is, in this instance, only another name for the ascertainment of an indebtedness of the city to the board, available to the creditors of the board, after their claims, as such, are judicially determined."

I read further from the opinion of the supreme court (153 U. S. 435, 14 Sup. Ct. 905):

"If the board had not been abolished, judgment could not have been recovered against it by complainants in the circuit court; and if a judgment had been recovered by them in the state court, a creditors' bill would have been merely ancillary to the judgment, and could not have been entertained in the circuit court as an original bill. Upon the facts appearing in this record, the assignees would have acquired no new and independent right of recovery, by reason of the judgment, not possessed by the assignors. The board being abolished, recovery of a judgment was dispensed with, but the

establishment of the claims was still required as the basis for further relief; and that relief involved nothing more than recovery over, or a direct decree, within the principles of City of New Orleans v. Gaines' Adm'r, supra, analogous to judgment on garnishee process. The suit must, therefore, be regarded as a suit to enforce the payments of the warrants and certificates, and, as such, a suit to recover their contents; and this is so on any other ground of equity jurisdiction which has been suggested. In our judgment, the pleadings show a suit to recover the contents of choses in action; and, as the bill contained no averment that it could have been maintained by the assignors, if no assignments had been made,—from the statement accompanying the certificate it appears affirmatively that it could not,—the jurisdiction of the circuit court cannot be sustained on the ground of diverse citizenship."

Why did not the supreme court answer all the questions? The opinion shows that the court believed it had finally disposed of the case by answering the first and third questions, and by strongly intimating its opinion as to the second. The supreme court had clearly said that the case was not a suit in equity arising under the constitution of the United States. It had clearly stated that the only grounds of equitable cognizance contended for were untenable. It had clearly characterized the case as being a suit for the recovery of the contents of choses in action, and, as the court of appeals had certified to the supreme court that the assignors of the complainant were citizens of Louisiana (153 U. S. 417, 14 Sup. Ct. 905), the supreme court, at the close of their opinion (153 U. S. 435, 14 Sup. Ct. 905), said as already stated:

"As the bill contained no averment that it could have been maintained by the assignors, if no assignments had been made,—*from the statement accompanying the certificate it appears affirmatively that it could not,*—the jurisdiction of the circuit court cannot be sustained on the ground of diverse citizenship." (The italics are mine.)

Virtually, the only one of the four questions which the supreme court left unanswered is the fourth, which inquires whether the city of New Orleans is liable beyond the taxes assessed and collected. In my judgment, it is clear that the reason of the supreme court for failing to answer that question was that, by answering the other questions, the court considered the case finally disposed of. In other words, having found that the only grounds of equitable cognizance contended for were untenable, and that the suit was a suit to recover the contents of choses in action, and finding, further, upon the statement of the court of appeals, that there was no diverse citizenship in the case, it was idle to deal with the fourth question. To sustain the demurrer and dismiss the bill, I need go no further than to say that the complainant has not complied with the order of the court of appeals. He has not made the jurisdiction of this court appear affirmatively. In fact, according to the statement of the court of appeals to the supreme court, the complainant cannot make the jurisdiction appear. He should have named the states of which the certificate holders were citizens. The diverse citizenship is the jurisdictional basis of this case. It is an issuable fact. I am clear that the demurrer must be sustained, and the bill dismissed.