## ARBUCKLE *v.* BLACKBURN.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 66. Argued November 10, 1903.—Decided December 7, 1903.

Where the jurisdiction of the Circuit Court is invoked on the ground of diverse citizenship it will not be held to rest also on the ground that the suit arose under the Constitution of the United States unless it really and substantially involves a dispute or controversy as to the effect or construction of the Constitution upon the determination of which the result depends, and which appears on the record by a statement in legal and logical form such as good pleading requires; and where the case is not brought within this rule the decree of the Circuit Court of Appeals is final.

Where the constitutionality of a police regulation of a State is conceded, the construction placed thereon, and prosecutions commenced in view of such construction thereunder, by an officer of the State in the discharge of his duty, do not in themselves constitute a deprivation of property without due process of law, a denial of equal protection of the law by the State, or any direct interference with interstate commerce, and afford no ground for the jurisdiction of the Circuit Court as a Court of the United States.

THIS was a bill filed by Arbuckle Brothers against Joseph E. Blackburn, as Dairy and Food Commissioner of the State of Ohio, to restrain him from certain action on his part as such officer, including prosecutions for violation of pure food laws of the State.

After a jurisdictional clause setting forth diversity of citizenship, the bill averred that by an act of the general assembly of the State of Ohio, passed in the year 1884, entitled "An act to provide against the adulteration of food and drugs," as amended by an act passed in the year 1890, entitled "An act to amend section 3 of an act entitled 'An act to provide against the adulteration of food and drugs,' passed March 20, 1884," which act was still in full force and virtue, it was provided that no person should, within the State of Ohio, manufacture for sale, offer for sale, or sell any article of food which was adulterated within the meaning of said act, and that the term "food" used therein should include all articles used for food or drink by man, whether simple, mixed or compound. That it was further provided that food should be deemed adulterated "(1) If any substance or substances have been mixed with it, so as to lower or depreciate, or injuriously affect its quality, strength or purity; (2) If any inferior or cheaper substance or substances have been substituted wholly or in part for it; (3) If any valuable or necessary constituent or ingredient has been wholly or in part abstracted from it; (4) If it is an imitation of, or is sold under the name of, another article; (5) If it consists wholly, or in part, of a diseased, decomposed, putrid, infected, tainted or rotten animal or vegetable substance or article, whether manufactured or not—or, in the case of milk, if it is the product of a diseased animal; (6) If it is colored, coated, polished or powdered, whereby damage or inferiority is concealed, or if by any means it is made to appear better or of greater value than it really is; (7) If it contains any added substance or ingredient which is poisonous or injurious to health; provided, that the provisions of this act shall not apply to mixtures or compounds recog-

nized as ordinary articles or ingredients of articles of food, if each and every package sold or offered for sale be distinctly labeled as mixtures or compounds, with the name and per cent of each ingredient therein, and are not injurious to health."

The bill alleged that for more than thirty years complainants and their predecessors had been engaged, and still were, in the manufacture and sale throughout the United States, including the State of Ohio, a certain compound or mixture known as Ariosa, composed of roasted coffee compounded and mixed with eggs and sugar, whereby the separate beans were coated, and to'a large extent hermetically sealed after roasting with a compound of sugar and eggs, the original strength and aroma of the coffee being thus preserved and deterioration prevented; that the coffee, eggs and sugar were each "a common, healthy and unobjectionable article of food;" that Ariosa had acquired great reputation, and the good will of the business of its manufacture and sale had become very valuable; that it was sold in Ohio in packages, each of which, in compliance with the laws of Ohio in respect to the adulteration of food, was distinctly labeled with a printed statement of the precise composition and the proportion of each of the ingredients of the article.

And it was charged that, notwithstanding these facts, defendant as dairy and food commissioner of Ohio had notified complainants that he considered Ariosa, as put up by them, an adulteration; that he had issued a circular letter to dealers and vendors wrongfully asserting that complainants in the manufacture and sale thereof refused to abide by the laws of Ohio in that behalf; and that he proposed to institute prosecutions to prevent and punish its sale or offer for sale in Ohio.

By the sixteenth paragraph of the bill it was averred that "said statute, construed as respondent claims it should be, is in conflict with the Fourteenth Amendment to the Constitution of the United States, and void, in that it would deprive complainants of their aforesaid property," and would deny them "equal protection of the law."

And by the seventeenth paragraph it was averred that Ariosa

was shipped to and sold in Ohio in original packages, "and said statute, if construed as the respondent herein claims it should be, is a regulation by the said State of Ohio of interstate commerce, and is repugnant to, and in violation of, the third clause of section eight of article one of the Constitution of the United States, and void."

That if "respondent be permitted to commit the threatened wrongs, the same will, as complainants are informed and believe, damage complainants to the extent of more than $100,000, an amount largely in excess of respondent's ability to respond in judgment."

The prayer was that the commissioner be restrained from charging that Ariosa was an article of food adulterated within the meaning of the statute, and that the use of the process of coating and glazing the coffee with the preparation of sugar and eggs and the importation and sale constituted violations of the statute; from threatening dealers with prosecution; and from instituting or commencing prosecutions.

The case came on to be heard on complainants' application for a preliminary injunction and was submitted on pleadings and evidence, whereupon the Circuit Court entered a decree denying the injunction and dismissing the bill, which decree was affirmed by the Circuit Court of Appeals, 113 Fed. Rep. 616, and the case was then brought here by appeal.

*Mr. John DeWitt Warner*, with whom *Mr. Clarence Brown* was on the brief, for appellants:

The court had jurisdiction. § 720, Rev. Stat. does not apply as the threatened prosecutions had not been commenced when the bill was filed. *Rhodes Co.* v. *New Hampshire*, 70 Fed. Rep. 721; *Live-Stock Dealers' & Butchers' Assn.* v. *Crescent City Live Stock Landing & Slaughterhouse Co.*, 1 Abb. (U. S.) 388, 404, 407; Fed. Cas. No. 8408; *Fisk* v. *Railroad Co.*, 10 Blatchf. 518; Fed. Cas. No. 4830; *Louisiana* v. *Lagarde*, 60 Fed. Rep. 186, 193; *Yick Wo* v. *Crowley*, 26 Fed. Rep. 207.

This suit is not against the State of Ohio within the intend-

ment of the Eleventh Amendment to the Constitution of the United States. *Scott* v. *Donald*, 165 U. S. 58; *Tindal* v. *Wesley*, 167 U. S. 204; *Western Union Tel. Co.* v. *Myall*, 98 Fed. Rep. 335; *Railway Co.* v. *Dey*, 35 Fed. Rep. 866–871; *Fitts* v. *McGhee*, 172 U. S. 516; *Union. Pac. R. Co.* v. *Alexander*, 113 Fed. Rep. 347; *Smyth* v. *Ames*, 169 U. S. 466; *Prout* v. *Starr*, 188 U. S. 537; *Cent. Trust Co.* v. *Citizens Street Ry. Co.*, 80 Fed. Rep. 218; 225; *Louisiana* v. *Lagarde*, 60 Fed. Rep. 186; *L. & N. R. Co.* v. *Brown*, 123 Fed. Rep. 946, and cases cited.

In defence of property rights, and when justified by equitable considerations, courts of equity may enjoin criminal prosecution. Snell, Principles of Equity, 12th ed. 648 (Lond. 1898); High on Injunction, ed. 1890, § 68; *Lord Auckland* v. *Westminster Local Board of Works*, L. R. Ch. App. Cas. VII, 597; *Atlanta* v. *Light Co.*, 71 Georgia, 106; *Mobile* v. *L. & N. R. R. Co.*, 84 Alabama, 115; *Birmingham* v. *Alabama, G. S. R. R. Co.*, 98 Alabama, 134; *R. R. Co.* v. *Attala*, 118 Alabama, 362; *Dinsmore* v. *Board of Police*, 12 Abb. N. C. 436; *Manhattan Iron Works* v. *French*, 12 Abb. N. C. 446.

This jurisdiction has been frequently exercised by the Federal courts in restraint of state officials (as well as others) from both civil and criminal prosecutions in state (as well as other) courts. *Central Trust Co.* v. *Citizens St. R. Co.*, 80 Fed. Rep. 218; *Western Union Tel. Co.* v. *Myall*, 98 Fed. Rep. 335; *Minneapolis Brewing Co.* v. *McGillivray*, 104 Fed. Rep. 258; *U. P. R. R. Co.* v. *Alexander*, 113 Fed. Rep. 347; *L. & N. R. Co.* v. *Brown*, 123 Fed. Rep. 946; *Tindal* v. *Wesley*, 167 U. S. 204; *State of Louisiana* v. *Lagarde*, 60 Fed. Rep. 186; *Donald* v. *Scott*, 67 Fed. Rep. 854; *Scott* v. *Donald*, 165 U. S. 58; *Wong Wai* v. *Williamson*, 103 Fed. Rep. 1; *Jew Ho* v. *Williamson*, 103 Fed. Rep. 10; *Express Co.* v. *Mayor*, 116 Fed. Rep. 756, and cases cited; *Wallace* v. *R. R. Co.*, 118 Fed. Rep. 422; *Smyth* v. *Ames*, 169 U. S. 466.

The bill sets forth causes of action justifying the relief asked. Defendant's circulars and threats of prosecution are in themselves cause of action. *Farquahar* v. *Nat. Harrow Co.*, 102

Fed. Rep. 714, and numerous cases cited on p. 715; *Adriance* v. *Nat. Harrow Co.,* 121 Fed. Rep. 827; *Hutchinson* v. *Beckham,* 118 Fed. Rep. 399.

The construction of a statute is not a matter of discretion. Defendant-respondent is left equally unprotected, whether by a void statute (if his construction is correct), or by the fact (if his construction is wrong) that the law is not such as he assumes it to be.

Defendant is utterly mistaken in the construction he claims for the Ohio statute, under color of which his threats are made —Ariosa being within the saving clause, and not within the prohibition of such statute. *White* v. *Ohio,* 12 Ohio N. P. 659.

To justify acts thereunder as within the police powers of the State, the construction of the statute permitting or requiring such acts must be—(*a*) The proper and legal construction of such statute; and (*b*) Such as subserve some public end justifying the exercise of such police powers. As to the latter see *Matter of Jacobs,* 98 N. Y. 98; *In re Marshall,* 102 Fed. Rep. 323; Black on Interpretation, 304.

(*c*) Properly construed, the Ohio statute in question is no protection to respondent; and (*d*) Respondent's erroneous construction is as utterly futile as a defence here, as can possibly be the statute itself were its effect such as he claims. *Pre-Digested Food Co.* v. *McNeal, Dairy Comm'r,* 4 Ohio S. & C. P. Dec. 456.

The statute in question, if construed as respondent claims— and in any case his such construction—is unconstitutional and of no protection to him. It interferes with interstate commerce. *Schollenberger* v. *Pennsylvania,* 171 U. S. 1.

Where serious wrong cannot otherwise be righted, equity will neither hesitate to exercise its jurisdiction to the full extent of its scope, nor be nice to seek reasons why it should not do so. *Exp. Co.* v. *Mayor &c.,* 116 Fed. Rep. 756; *Niagara Ins. Co.* v. *Cornell,* 110 Fed. Rep. 816, and cases cited *supra.*

Eggs, sugar and coffee, each being an ordinary and healthful ingredient of food, any citizen of Ohio has a right to sell, pur-

chase or use either, in any shape he sees fit. It is no business of the State how much he values each, the proportion in which he shall mix them, or the manner in which he shall prepare, drink, or otherwise use them. If he chooses to buy them, compounded or mixed, or, if the prosecution prefer, "aggregated," as Ariosa, he has a right to do so. *Dorsey* v. *Texas,* 40 L. R. A. (Texas) 201.

*Mr. Edmond B. Dillon,* with whom *Mr. Roscoe J. Mauck* was on the brief, for appellee:

There are but two cases exactly in point. *Williams* v. *McNeal,* 7 C. C. 280; *PreDigested Food Co.* v. *McNeal, Commissioner,* 1 Ohio N. P. 266, both sustain the appellee.

This is really a suit against the State. *Cunningham* v. *R. R. Co.,* 109 U. S. 446; *Davis* v. *Gray,* 16 Wall. 203.

There is no distinction in this case between patented and unpatented articles. *Palmer* v. *State,* 39 Ohio St. 236, and cases cited; *Patterson* v. *Kentucky,* 7 Otto, 501.

The statute is constitutional. Cooley's Const. Lim. 3d ed. 168; *Com.* v. *Huntley,* 156 Massachusetts, 236; *Powell* v. *Pennsylvania,* 127 U. S. 678, reaffirmed in *Schollenberger* v. *Pennsylvania,* 171 U. S. 1; *Plumley* v. *Massachusetts,* 155 U. S. 461.

The general food act of Ohio is copied verbatim from a New York statute which, in turn, is copied from a statute of Victoria. The law has stood the test of scores of courts in this country and in England. In Ohio this act has been approved by the Supreme Court in the following cases: *State* v. *Cap. City Dairy Co.,* 62 Ohio St. 350; *Palmer* v. *State,* 39 Ohio St. 236; *Meyer* v. *State,* 54 Ohio St. 242; *State* v. *Kelly,* 54 Ohio St. 166; *State* v. *Dreber,* 54 Ohio St. 115; *State* v. *Ruedy,* 57 Ohio St. 224; *Hutchinson* v. *State,* 56 Ohio St. 82. See *Gundling* v. *Chicago,* 177 U. S. 183.

The statute does not interfere improperly with interstate commerce. Cases cited, *supra; Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *Kimmish* v. *Pennsylvania,* 129 U. S. 217; *Patterson*

v. *Kentucky,* 7 Otto, 501; *Hinson* v. *Lott,* 8 Wall. 148; *Turner* v. *Maryland,* 107 U. S. 38.

A court will not interfere in cases where the executive is merely exercising his judgment as to the guilt or innocence of a citizen by causing the arrest or refusing to cause the arrest of any citizen for alleged violation of a valid criminal statute. *Perault* v. *Rand,* 10 Hun, 222; *Judges* v. *People,* 18 Wendell, 79, 99.

There are cases which hold that the legislature itself cannot invest the judicial department of the government with authority to assume jurisdiction over legislative or executive departments. *Sterling* v. *Doake,* 29 Ohio St. 457; *State* v. *Nichols,* 26 Arkansas, 74; *State* v. *Sloss,* 25 Missouri, 291; *Attorney General* v. *Brown,* 1 Wisconsin, 513; *Haley* v. *Clark,* 26 Alabama, 439; *Smith* v. *Myers,* 109 Indiana, 1; *Cunningham* v. *R. R. Co.,* 109 U. S. 446; *Davis* v. *Gray,* 16 Wall. 103; *Gaines* v. *Thompson,* 7 Wall. 347; *Comm. of Patents* v. *Whitiley,* 4 Wall. 522.

The interference of the courts with the performance of the ordinary duties of the executive department would be productive of nothing but mischief. *United States* v. *Seaman,* 17 How. 225; *United States* v. *Guthry,* 17 How. 284; *United States* v. *Commissioner,* 5 Wall. 563; *Litchfield* v. *Register,* 9 Wall. 576; *Georgia* v. *Stanton,* 6 Wall. 50; *Mississippi* v. *Johnson,* 4 Wall. 475; *Cohen* v. *Commissioners,* 77 N. Car. 2; *Fickle* v. *Commissioners,* 66 How. Pr. 318; *Hinton* v. *Sheriff,* 46 Georgia, 350; *Chicago* v. *Wright,* 69 Illinois, 318; *R. R. Co.* v. *DeGraaf,* 27 Minnesota, 1; *Osborne* v. *Bank,* 9 Wheat. 738; Spelling on Extraordinary Relief, §§ 625, 628.

The action is forbidden by § 720, U. S. Rev. Stat. The cases cited by appellant are inapplicable and can be distinguished from this case.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

We are of opinion that this appeal must be dismissed; because

the jurisdiction of the Circuit Court was "dependent entirely upon the opposite parties to the suit or controversy being . . . citizens of different States," and the decree of the Circuit Court of Appeals was final. Act of March 3, 1891, 26 Stat. 826, c. 517, § 6.

The Circuit Courts have "original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, . . . or in which there shall be a controversy between citizens of different States, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid, . . ." Act of March 3, 1887, 24 Stat. 552, c. 373; Act of August 13, 1888, 25 Stat. 433, c. 866.

In the present case the Circuit Court had jurisdiction on the ground of diverse citizenship, but it is now contended that jurisdiction also rested on the ground that the suit was one arising under the Constitution of the United States.

The rule is firmly established that a suit does not so arise unless it really and substantially involves a dispute or controversy as to the effect or construction of the Constitution, upon the determination of which the result depends, and which appears on the record by a statement in legal and logical form such as is required in good pleading. *Defiance Water Company* v. *City of Defiance, ante,* p. 184, and cases cited.

The averments of this bill did not bring the case within that rule for they put forward no existing controversy as to the effect or construction of the Constitution, on which the relief depended, and set up no right which might be defeated or sustained according to such construction.

By the laws of Ohio the office of Dairy and Food Commissioner was created, and it was made the duty of that officer to attend to the enforcement of all the laws against fraud and

adulteration or impurities in food, drink, or drugs; to appoint assistant commissioners; and to employ such experts, chemists, agents, inspectors and counsel as he might deem necessary for the proper enforcement of the laws; and it was also made his duty to inspect any articles made or offered for sale as articles of food or drink, and to prosecute, or cause to be prosecuted, any person or persons, firm or firms, corporation or corporations engaged in the manufacture or sale of any article of food or drink adulterated in violation of any laws of the State. 1 Bates' Ohio Statutes (1897), p. 262, Tit. III, c. 18.

By the act of 1884, as amended in 1890, and set out in the bill, it was provided, among other things, that food should be deemed adulterated "if it is colored, coated, polished or powdered, whereby damage or inferiority is concealed, or if by any means it is made to appear better or of greater value than it really is." 2 Bates' Ohio Statutes (1897), p. 2229, Tit. V, ch. A. The proviso excepted mixtures and compounds, recognized as ordinary articles of food, not injurious to health, and labeled as required.

It is not asserted that this police regulation is in contravention of the Constitution of the United States, but it is said that when the commissioner, in the discharge of his duty under the law, reached the conclusion that the coating of Ariosa with a glaze of sugar and eggs was calculated to conceal damage or inferiority, and to make the article appear better or of greater value than it really was, and that the article was not a compound or mixture, and proposed to prosecute, he thereby construed the act in a way, which, if his construction were correct, would render it unconstitutional.

But these were findings of fact which resulted in bringing the article within the prohibition and excluded it from the proviso, and neither findings nor prosecutions would in themselves constitute a deprivation of property, or a denial of the equal protection of the law, by the State, or any direct interference with interstate commerce, and the constitutionality of the statute was conceded.

The suggested controversy was purely hypothetical and based the supposed constitutional objections on the contingency that, on issues of fact, it might be judicially determined that Ariosa came within the statute, which complainants denied.

If the commissioner's conclusions were erroneous, the courts were open for the correction of the error, and the possibility that they might agree with the commissioner could not be laid hold of as tantamount to an actual controversy as to the effect of the Constitution, on the determination of which the result of the present suit depended. Indeed, in the only case called to our attention by counsel involving the status of Ariosa, the Court of Common Pleas of Lucas County, Ohio, held that it was not within the prohibition of the statute. *White* v. *Ohio,* 12 Ohio Nisi Prius Decisions, 659.

Reference to the Constitution to strengthen objections to a particular construction, or the pursuit of a certain course of conduct, is not sufficient to invoke jurisdiction. Whatever grounds of equity interposition may have existed here, and we express no opinion on that subject, the jurisdiction of the Circuit Court as a court of the United States depended alone on diverse citizenship. If the allegation of that fact had been omitted from the bill, the jurisdiction could not have been maintained.

*Appeal dismissed.*

Mr. Justice Day took no part in the disposition of the case.