## MADDEN BROS., Inc., v. RAILROAD & WAREHOUSE COMMISSION OF MINNESOTA et al.

District Court, D. Minnesota, Fifth Division. Aug. 9, 1930.

H. A. Dancer, of Duluth Minn., and Donald O. Wright and Alfred W. Bowen, both of Minneapolis, Minn., for complainant.

Henry N. Benson, Atty. Gen., and Charles E. Phillips and John F. Bonner, Asst. Attys. Gen., for defendants.

MOLYNEAUX, District Judge.

The complainant has filed its bill in equity against the railroad and warehouse commission and the Attorney General. In substance the bill alleges that Madden Bros., is a corporation incorporated under the laws of Minnesota, and since the spring of 1928 has been engaged in the business of transporting automobiles as a private carrier from plants of the manufacturers within and without the state of Minnesota to certain dealers in Minnesota and adjoining states.

That such transportation always has been and is in fact interstate commerce in part and intrastate commerce in part.

Prior to the commencement of the business and prior to purchasing trucks and equipment the complainant filed an application with the railroad and warehouse commission for a certificate of public convenience and necessity, pursuant to chapter 185, Session Laws of Minnesota for 1925.

Upon the filing of the application it was submitted to the Attorney General who held that the plan of operation was one of private carrier over which the commission had no

jurisdiction under the law. Chapter 185, Laws 1925.

The commission, following the advice of the Attorney General, advised the complainant that it would not be necessary to secure a certificate of public convenience and necessity.

Thereafter complainant invested large sums of money in automobile transportation equipment and entered into a contract with the Terminals & Transportation Corporation of America for the period of three years, under the terms of which it agreed to transport automobiles from Detroit, Mich., to Duluth, Minn., on certain specified rates, which contract is of the estimated value of $10,000.

After securing equipment and the contract with said Terminals Transportation Company complainant secured contracts for the transportation of a large number of automobiles from Detroit, Mich., and other lower lake ports to Minneapolis and St. Paul, such transportation being by boat to Duluth and by automobile truck from Duluth to points of final destination.

Unless interfered with by defendants, complainant will be able to secure contracts for the transportation of thousands of automobiles on lower lake ports to the twin cities in Minnesota at a large profit to itself.

Complainant has secured contracts for the transportation of a large number of automobiles from the Ford Motor Company assembling plant at St. Paul, to Duluth and other cities in Minnesota, and has transported such automobiles and is now transporting same at a large profit to itself.

Such transportation has been by automobile trucks and trailers over the highways of this state under private contracts and as a private and not a common carrier.

Complainant has never held itself out to be or acted as a common carrier.

The transportation of automobiles from the lower lake ports to the twin cities and elsewhere in Minnesota outside of Duluth is alleged to be interstate commerce.

On August 1, 1922, certain railway companies named in the bill filed a petition with the railroad and warehouse commission alleging that the complainant was conducting its business as a common carrier and asking for appropriate action under such allegations on the part of the commission. The commission dismissed the petition. Thereafter the railroad companies filed another petition asking a reconsideration of their first petition and of the order dismissing the same.

On October 3, 1929, the commission set aside its order dismissing said petition and ordered complainant to show cause why it should not be found and declared to be a common carrier and why it should not be required to cease and desist from such operations.

A hearing was had and testimony was taken before the commission. An Assistant Attorney General of this state was present during the hearing. The Attorney General made and submitted his written opinion to the commission in which he held that complainant was and is a private carrier only and not subject to the provisions of chapter 185, Session Laws 1925.

Under date of February 17, 1930, the commission made an order declaring complainant to be a common carrier engaged in the transportation of automobiles by automobile truck over the highways of Minnesota and subject to the provisions of chapter 185, and ordering and directing complainant to desist from further carrying on said business or transporting automobiles over the highways of Minnesota until it had secured a certificate of public convenience and necessity from the commission to do so.

Complainant has worked up a large business in transporting automobiles as a private carrier, and the good will thereof is of the value of more than $3,000.

Complainant is now transporting Ford automobiles as above set forth, and, if required to cease and desist from such business, the business will be immediately and seriously injured or destroyed.

The complainant further alleges that the order of the commission is unreasonable, unjust, and oppressive, and, if enforced, will subject complainant to great and irreparable loss, damage, expense, and inconvenience, and will confiscate the property of complainant and deprive it of its property without due process of law, in violation of the Constitution of the state of Minnesota and the Fourteenth Amendment to the Constitution of the United States. Enforcement of this order will, among other things, destroy and render valueless the good will of complainant's business and the contract with said Terminals and Transportation Company of America.

The defendants threaten to, and, unless restrained by the court, will proceed to, enforce its order.

That complainant has no remedy at law.

Complainant prays the court for an injunction temporarily and permanently enjoining defendants, their officers, etc., from any attempt to force complainant to comply with the order, and prays for a temporary injunction effective during the pendency of this action.

The defendants and each of them have filed a motion to dismiss this action under Rule 29 of the Equity Court (28 USCA § 723), alleging, among other grounds, lack of jurisdiction of the subject-matter, and that complainant has a complete and adequate remedy at law, and want of equity.

1. It has been suggested by the plaintiff that this is a three-judge case pursuant to the provisions of section 266, Judicial Code, USCA title 28, § 380.

As I take the view that the court is without jurisdiction, and that the case must be dismissed for that reason, it follows that there is no occasion for a hearing by three judges.

2. Diversity of citizenship being absent, this court is without jurisdiction unless the action involves a dispute or controversy arising under the Constitution or laws of the United States. Section 24, Judicial Code, USCA title 28, § 41.

The applicable rule as stated by the Supreme Court is that: "When a suit does not really and substantially involve a dispute or controversy as to the effect or construction of the Constitution or laws of the United States, upon the determination of which the result depends, it is not a suit arising under the Constitution or laws. And it must appear on the record, by a statement in legal and logical form, such as is required in good pleading." Defiance Water Co. v. City of Defiance, 191 U. S. 184, 24 S. Ct. 63, 66, 48 L. Ed. 140.

I am of the opinion that the averments of the bill do not bring the case within the rule, and that the suit is without the jurisdiction of this court.

It is not claimed by plaintiff that the statute in question is in contravention of the Constitution of the United States. The contention is that the Commission erroneously found as a matter of fact that plaintiff is not a private carrier but an auto transportation company as defined by the statute, or misconstrued the statute so as to bring the plaintiff and its operations within the purview of the prohibition of the statute.

There is thus presented to this court only the question of the proper construction of the statute or the correction of the commission's alleged error in finding that the plaintiff is an auto transportation company within the meaning of the statute.

A determination of these questions does not involve but excludes any consideration of the constitutionality of the statute or the constitutionality of the order of the commission. If the plaintiff is an auto transportation company as defined by the statute, then it is deprived of no property in violation of the Constitution, because it has no right to operate without a certificate, the statute being valid. If it is not an auto transportation company as defined by the statute, the statute does not apply, the Commission either misconstrued the statute or erred in its findings of fact.

The prohibition of the Fourteenth Amendment: "No State shall make or enforce any laws which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws," is directed against the passage of laws in contravention of the amendment and does not apply to the misconstruction of laws. Hanford v. Davies, 163 U. S. 273, 16 S. Ct. 1051, 41 L. Ed. 157.

Such questions are for the consideration of the state courts in the first instance and can only reach the courts of the United States, if at all, by a certiorari to the state courts. Hanford v. Davies, 163 U. S. 273, 16 S. Ct. 1051, 41 L. Ed. 157; Defiance Water Co. v. Defiance, 191 U. S. 184, 24 S. Ct. 63, 48 L. Ed. 140; Arbuckle v. Blackburn, 191 U. S. 405, 24 S. Ct. 148, 150, 48 L. Ed. 239; Piedmont & No. Ry. Co. v. U. S., 280 U. S. 469, 50 S. Ct. 192, 74 L. Ed. 551.

There is no averment of fact in the bill to warrant the contention made that the operations of the plaintiff in interstate commerce will be interfered with by the enforcement of the order of the commission, nor is there anything in the statute or in the order which supports that charge.

It is asserted that the order might operate as res judicata against plaintiff's claim that it is within the exceptions in the act. In support of this position the case of Railroad and Warehouse Commission of Minnesota v. Duluth Street Railway Company, 273 U. S. 625, 47 S. Ct. 489, 490, 71 L. Ed. 807, is cited.

In that case the Street Railway Company sued in the United States District Court [4 F.(2d) 543] to enjoin the enforcement of an

order of the commission fixing a rate to be charged by the street railway on the ground that the rate was confiscatory. The commission was empowered by the statute to fix rates to be charged by street railways for the carriage of passengers. The statute provided for an appeal from the order of the commission so fixing a rate to the District Court by either party. The Supreme Court of Minnesota had held the proceedings, upon such appeal, before the district court to be judicial in their character.

The Supreme Court of the United States in sustaining the jurisdiction of the federal court said: "If then the State Court should affirm the rate fixed by the Commission and the matter should become res judicata, a resort to the federal Court would be too late." And it was held that: "A public utility claiming that an order of a state commission fixing its rates deprives it of a fair return, is not bound to exhaust a statutory remedy by appeal to the state court before going into the federal court, when it is possible that such remedy might be held judicial rather than legislative in character, and the decision therefore res judicata against the complainant."

While the statute in question in the present case devolves upon the commission the duty to inquire into and pass upon the question of the right of any person, etc., to a certificate of public necessity or convenience and to deny or grant such certificate as the facts may warrant, no provision of the statute has been pointed out to me, nor can I find any, giving any force or effect to a cease and desist order such as is involved in this case.

While it is the duty of or the commission is empowered to prosecute any auto transportation company, as defined by the statute, for operating without a certificate and for violating the orders of the commission made in the performance of its duty, it is not the duty of the commission to order any person, etc., to cease and desist from violating the statute before beginning such prosecution. The prosecution may as well be made without any such order.

It is clear that the order of the commission, in so far as it assumes to direct the plaintiff to cease and desist from further carrying on its operations, exceeded the powers of the commission under the statute.

The case of Piedmont & Northern Railway Company v. United States, supra, is authority for the proposition that neither the assumption of jurisdiction by the commission nor the finding of fact as shown by the order

can operate as res judicata of the plaintiff's claim of immunity, and that the plaintiff is as free to carry on its operations after as it was before the order was made.

In making the inquiry and determining the fact as to whether or not the plaintiff was entitled to a certificate the commission was exercising an administrative function and not acting as a court. That portion of the order which directed the plaintiff to cease and desist does not appear to be authorized by the statute. The only order in this respect which the statute authorizes is an order to grant or deny a certificate of public convenience or necessity. Plaintiff is not complaining of that portion of the order which denies to it a certificate and has no reason to appeal from that portion of the order.

In any proceeding instituted by the commission to prosecute the plaintiff for violation of the statute or the order the plaintiff may interpose its defense. Proceedings must be instituted in court to enforce the statute or order, either by way of action to collect the statutory penalty imposed by the statute for a violation of the commission's order or by proceedings to enjoin the plaintiff from further operating without a certificate.

In such proceedings the state must show that the plaintiff is an auto transportation company, and that it is not within the exceptions to the act. The plaintiff may, in defense of its rights in such proceeding, show that it is not an auto transportation company, and that it is within the exceptions to the act.

The case of Arbuckle v. Blackburn, supra, is illustrative of the principle of law applicable to this case. Holding that the suit was not one arising under the constitution or laws of the United States, the court said:

"By the laws of Ohio the office of dairy and food commissioner was created, and it was made the duty of that officer to attend to the enforcement of all the laws against fraud and adulteration or impurities in food, drink, or drugs; to appoint assistant commissioners; and to employ such experts, chemists, agents, inspectors, and counsel as he might deem necessary for the proper enforcement of the laws; and that it was also made his duty to inspect any articles made or offered for sale as articles of food or drink, and to prosecute, or cause to be prosecuted, any person or persons, firm or firms, corporation or corporations engaged in the manufacture or sale of any article of food or drink adulterated in violation of any laws

of the state. 1 Bates' Anno. Stat. Ohio 1897, p. 262, title III, chap. 18.

"By the act of 1884, as amended in 1890, and set out in the bill, it was provided, among other things, that food should be deemed adulterated 'if it is colored, coated, polished, or powdered, whereby damage or inferiority is concealed, or if by any means it is made to appear better or of greater value than it really is.' 2 Bates' Anno. Ohio 1897, p. 2229, title V, chap. A. The proviso excepted mixtures and compounds, recognized as ordinary articles of food, not injurious to health, and labeled as required.

"It is not asserted that this police regulation is in contravention of the Constitution of the United States, but it is said that when the commissioner, in the discharge of his duty under the law, reached the conclusion that the coating of Ariosa with a glaze of sugar and eggs was calculated to conceal damage or inferiority, and to make the article appear better or of greater value than it really was, and that the article was not a compound or mixture, and proposed to prosecute, he thereby construed the act in a way, which, if his construction were correct, would render it unconstitutional.

"But these were findings of fact which resulted in bringing the article within the prohibition, and excluded it from the proviso, and neither findings nor prosecutions would in themselves constitute a deprivation of property, or a denial of the equal protection of the law, by the state, or any direct interference with interstate . commerce, . and the constitutionality of the statute was conceded.

"The suggested controversy was purely hypothetical, and based the supposed constitutional objections on the contingency that, on issues of fact, it might be judicially determined that Ariosa came within the statute, which complainants denied.

"If the commissioner's conclusions were erroneous, the courts were open for the correction of the error, and the possibility that they might agree with the commissioner could not be laid hold of as tantamount to an actual controversy as to the effect of the Constitution on the determination of which the result of the present suit depended."

With equal force it may be said in the case at bar, the constitutionality of this police regulation not being questioned, neither the findings of fact which resulted in bringing the plaintiff's operations within the purview of the statute and excluded it from the proviso, nor the prosecutions prophesied by said order, would in themselves constitute

deprivation of property nor any direct interference with interstate commerce.

If the commission's conclusions were erroneous either as to the findings of fact or as to the construction of the statute, the courts of the state were open to the plaintiff for vindication of his rights and was the proper and in the first instance the only forum to which plaintiff could resort.

I hold that this court is without jurisdiction of the subject-matter of the suit, and for that reason the motion of the defendant is granted, and it is ordered that this action be dismissed.