## MATHERS & MATHERS v. URSCHEL.
### No. 1039.

Circuit Court of Appeals, Tenth Circuit.
Jan. 9, 1935.

R. F. Barry, of Anadarko, Okl. (Mathers & Mathers, of Oklahoma City, Okl., on the brief), for appellants.

George W. Grant, of Oklahoma City, Okl. (R. J. Price, of Oklahoma City, Okl., on the brief), for appellee.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This controversy relates to a 16-cylinder Cadillac automobile. The parties will be referred to as they were in the trial court.

Plaintiffs, a firm of attorneys at law in Oklahoma City, filed a bill in equity in the United States court for the Western District of Oklahoma against Herbert K. Hyde, United States attorney for that district, and R. H. Colvin and Gus Jones, agents for the United States Bureau of Investigation, to confirm title and secure possession of certain personal property and to enjoin its disposition pending the suit. It was alleged that Geo. R. Kelly and wife, Kathryn Thorne Kelly, were arrested at Memphis, Tenn., charged with a violation of section 408a, 18 USCA (Criminal Code) [1]; that at the time of their arrest they owned and possessed the property; that none of it was purchased with ransom money and was not connected with any criminal case against them; that the Kellys executed and delivered to plaintiffs a bill of sale conveying such property; that plaintiffs owned it and were entitled to its immediate possession; that it was in the possession of the defendants in their respective official capacities; and that, unless they were restrained from delivering it to another person, plaintiffs would suffer irreparable injury.

Defendants did not answer, but made default. Charles F. Urschel intervened, alleging that Kelly and others kidnapped and held him in seclusion for payment of ransom; that he caused $200,000 to be paid Kelly for his release; that the Kellys caused that money to be exchanged for other money, and then invested a part of it in the property described in the bill; that for such reason the property belonged to him; and that plaintiffs had notice of such facts at the time they acquired the bill of sale.

The court entered an order directing defendants to deliver certain of the property to plaintiffs, but expressly excluded therefrom title papers to a Chevrolet automobile, the Cadillac automobile in question, and any other automobiles or trucks. The case was set for trial on a day named to determine title or right of possession to the automobiles. On that day the court found that intervener was kidnapped at Oklahoma City on July 21, 1933, transported to Texas and there held for ransom; that nine days later he caused $200,000 in $20 bills to be paid to the Kellys for his release; that the Kellys were convicted of that offense in October, 1933, and that plaintiffs were their attorneys in that case; that the Kellys purchased the Cadillac automobile from the Cadillac Sales Corporation at Cleveland, Ohio, on June 7, 1933, for a consideration of $6,250; that $4,940 of such consideration was paid at that time; that the remaining $1,310 was paid in currency August 8, 1933—nine days after receipt of the ransom money—with one bill of $1,000 denomination and four of $100 denominations; that such currency was ransom money; and that plaintiffs had notice of these facts at the time they acquired the bill of sale. A decree was entered awarding title to the automobile to plaintiffs, subject to a lien in favor of intervener for $1,310. The lien was subsequently decreased by $100, the amount plaintiffs had expended in repossessing and preserving the automobile. From that decree, plaintiffs appealed.

Two questions are argued for reversal. The first is that the finding that ransom money was used to make the final payment on the automobile is not sustained by substantial evidence, and the second is that the court was without jurisdiction of the subject-matter. The conclusion we have reached respecting the second question renders discussion of the first unnecessary.

Section 24 of the Judicial Code [2] confers original jurisdiction upon the District Courts of the United States in all suits of a civil nature at common law or in equity, "where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different States."

The bill fails to allege diversity of citizenship or the amount in controversy. Plaintiffs and defendant Hyde are citizens of the state of Oklahoma. The citizenship of Colvin and Jones is not shown in the record. Jurisdiction predicated on diversity of citizenship exists only where there is complete diversity, that is, excluding nominal parties, all plaintiffs are citizens of different states from all defendants. It does

---

[1] 47 Stat. 326 (see 18 USCA § 408a).    [2] 28 USCA § 41.

not exist if plaintiffs and one defendant are citizens of the same state, and the parties can neither confer it by consent nor waive it by inaction. Mitchell v. Maurer, 293 U. S. 237, 55 S. Ct. 162, 79 L. Ed. ——, decided December 3, 1934.

The contention seriously advanced in support of the decree is that the cause of action is one arising under the laws of the United States, and therefore the court had jurisdiction apart from the citizenship of the parties. The bill merely alleged that defendants held the property in their respective official capacities, and, unless restrained, would deliver it to some other person, to plaintiffs' irreparable injury. The manner in which its possession was acquired, the purpose of its acquisition, or the asserted rights of the defendants thereto, were not alleged directly or indirectly. It is well settled that a suit does not have its origin in the laws of the United States, unless it involves a real and substantial controversy respecting the validity, construction, or effect of such laws upon which the determination of the result depends, and that fact must appear by distinct allegations in legal and logical form. It cannot rest upon inference, argument, or anticipated defense. Hanford v. Davies, 163 U. S. 273, 16 S. Ct. 1051, 41 L. Ed. 157; Defiance Water Co. v. Defiance, 191 U. S. 184, 24 S. Ct. 63, 48 L. Ed. 140; Arbuckle v. Blackburn, 191 U. S. 405, 24 S. Ct. 148, 48 L. Ed. 239; Shulthis v. McDougal, 225 U. S. 561, 32 S. Ct. 704, 56 L. Ed. 1205; Hull v. Burr, 234 U. S. 712, 34 S. Ct. 892, 58 L. Ed. 1557; First Nat. Bank of Canton, Pa. v. Williams, 252 U. S. 504, 40 S. Ct. 372, 64 L. Ed. 690; South Covington & C. St. Ry. Co. v. Newport, 259 U. S. 97, 42 S. Ct. 418, 66 L. Ed. 842; Norton v. Larney (C. C. A.) 289 F. 395; Davis v. McFarland (C. C. A.) 15 F.(2d) 612. It does not appear in any wise that a real and substantial controversy concerning the validity, construction, or effect of any law of the United States is presented here, upon which the result of the action depends. No such question is put forward in the bill, and consequently we cannot sanction the view that the suit finds its genesis in the laws of the United States.

Neither can jurisdiction emanate from section 33 of the Judicial Code.[3] By the amendment of August 23, 1916,[4] that statute was made applicable to a suit against an officer of a court of the United States for or on account of an act done under color of his office or in the performance of his duties as such officer. But the scope and function of the statute is to authorize removal of such a suit from a state court. It empowers an officer named to remove such a suit filed against him in a state court. It is not a grant of jurisdiction to a United States court to entertain such a suit filed there in the first instance. Barnette v. Wells Fargo Nevada Nat. Bank, 270 U. S. 438, 46 S. Ct. 326, 70 L. Ed. 669; Gay v. Ruff, 292 U. S. 25, 54 S. Ct. 608, 78 L. Ed. 1099, 92 A. L. R. 970; Cincinnati Brewing Co. v. Bettman (C. C.) 102 F. 16.

Lack of jurisdiction was not called to the attention of the trial court. It is presented here for the first time, but it goes to the subject-matter and may be raised at this delayed juncture. Plaintiffs are officers of the trial court and of this court. They obtained an order directing defendants to deliver certain property to them. Of course, since that order was entered in a case over which the court had no jurisdiction, they will redeliver the property and file with the clerk of the trial court a certificate that they have done so.

The decree is reversed, and the cause remanded.