249, 63 L.Ed. 561, Jelke v. United States, 7 Cir., 255 F. 264, 275, Profitt v. United States, 9 Cir., 264 F. 299.

But the pleader has in eleven additional pages, set forth the alleged conspiracy in detail and the indictment must be tested by the sufficiency of these averments. They may not be rejected as surplusage. Bishop's Criminal Procedure, § 482; State v. Leonard, 171 Mo. 622, 71 S.W. 1017, 94 Am.St.Rep. 798.

As nearly as I can determine from the rather confused averments of the indictment the agreement of the conspirators or the purpose of the combination was this:

Certain persons were operating lottery schemes, the prizes awarded "being the combinations of figures known as 'mutuel prices' or closing odds for each race run at various tracks of the United States" and the conspirators combined to have such mutuel prices or closing odds transmitted to the said operators of lotteries as promptly as possible by means of facilities provided by the Western Union Telegraph Company.

"Mutuel prices" whatever the term may mean is here treated as synonymous with "closing odds", and clearly "closing odds" are not lists of prizes drawn or awarded by means of a lottery.

In my opinion the indictment does not charge the defendants with the commission of a crime and the demurrer must be sustained.

William A. Zerby, of Harrisburg, Pa., for petitioner.

Paul L. Hutchison, of Harrisburg, Pa., for Market Street Trust Co., Harrisburg, Pa.

JOHNSON, District Judge.

This is a petition for the appointment of a receiver for the real estate of Sarah Heller, for an accounting, and for a distribution of her assets according to law. The jurisdiction of this court has been questioned by the Market Street Trust Company, Harrisburg, Pennsylvania, an interested party, which is the question here for decision.

Certain allegations of the complaint concern the Flatiron Building, Harrisburg, Pennsylvania. The matter of the Flatiron Building has previously been decided by this court upon a similar petition. On November 8, 1937, this court dismissed a bill of this petitioner for the appointment of a receiver for this building, because the court had no jurisdiction. No appeal was ever taken and this matter cannot now be raised again.

## Application of HELLER.

### No. 562.

District Court, M. D. Pennsylvania.

June 4, 1941.

All of the remaining allegations of the complaint show that all of the interested parties to this action are citizens and residents of the Commonwealth of Pennsylvania. This court, therefore, does not have jurisdiction of this proceeding on the ground of diversity of citizenship. See 28 U.S.C.A. § 41(1), note 598; Mathers & Mathers v. Urschel, 10 Cir., 74 F.2d 591; Huester v. Gilmour, D.C., 13 F.Supp. 630; Nagle v. Wyoga Gas & Oil Corp., D.C., 10 F.Supp. 905. In addition the property in controversy is all located in Pennsylvania.

The only other allegations which pertain to jurisdiction allege that petitioner has been deprived of her property without due process of law, contrary to the 14th Amendment to the Constitution of the United States. The specific charge is that fraud has been practiced upon her in the courts of the Commonwealth of Pennsylvania. This court has no authority to review as on appeal any procedure or action in the courts of this Commonwealth, and it will not assume jurisdiction where such is the purpose.

For the foregoing reasons, the above action is dismissed for lack of jurisdiction, and it is further ordered that the restraining order made in the above case on May 5, 1941 is hereby vacated.

## M & M DREDGING & CONSTRUCTION CO. v. MIAMI BRIDGE CO.
### No. 286–M.

District Court, S. D. Florida, Miami Division.

June 21, 1941.

Stanley C. Myers and McKay, Dixon & DeJarnette, all of Miami, Fla., for libelant.

Mitchell D. Price & Charles W. Zaring and Kurtz, Reed, Sappenfield & Cooper, all of Miami, Fla., for respondent.

HOLLAND, District Judge.

1. The respondent, Miami Bridge Company, a Florida corporation, owns and operates a toll causeway across the waters of Biscayne Bay, in the Southern District of Florida. This causeway consists of an earthen embankment interrupted by numerous openings across which are bridges. In the western end of the causeway there is a long series of concrete spans supporting the causeway, in the center of which is a bascule bridge, i. e., one composed of two leaves which open upward so as to permit marine traffic to pass through. This bridge was constructed under a permit of the War Department which requires an opening of