CASTLE & COOKE TERMINALS, Limited v. LOCAL 137 OF INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSE-MEN'S UNION et al.

Civ. No. 1262.

United States District Court
D. Hawaii.

Feb. 20, 1953.

Blaisdell & Moore, Honolulu, Hawaii, for petitioner.

Bouslog & Symonds, Honolulu, Hawaii, for respondents.

McLAUGHLIN, Chief Judge.

In the first of a two-count complaint, Castle & Cooke Terminals, Limited, a Hawaiian corporation, claiming to be in interstate and foreign commerce, demanded injunction of alleged breach of contract of collective bargaining against Local 137 of the International Longshoremen's and Warehousemen's Union, alleged to be functioning bargaining agent for employees of the petitioner. In the second count, the same allegations were made as to the status of the petitioner and the respondents, who, in this case were Locals 136 and 142, and the individuals named. The relief demanded was injunction of acts of interference with the contract alleged to exist between the corporation and Local 137, named in the first count.

The action is founded on Sec. 15 of the contract which provides as follows:

"Section 15: It is expressly understood and agreed that during the term of this agreement any past, existing or future custom or practice of the Employer or of the Union to the contrary notwithstanding, there shall be no lockout or blacklist, by the Employer, nor any strike, sit-down, refusal to handle 'hot cargo', refusal to work, stoppage of work, slow-down, retarding of production or picketing of the Employer on the part of the Union or its representatives, or on the part of any employee covered by the terms of this agreement."

Although the petition on its face contains a general prayer for damages against all respondents, it was asserted by counsel for petitioner that this was withdrawn prior to removal to this Court. A temporary restraining order was issued ex parte, followed by two amended temporary restraining orders, and later by a temporary injunction after hearing—all by the Territorial Circuit Court of the First Judicial

Circuit. Thereafter, respondents removed the case to this Court on the following grounds:

1. That it is an action within a field preempted by Congress as exclusively Federal in nature, and thus within the field of original jurisdiction of United States District Courts;

2. That it is an action arising under a law of the United States regulating commerce and thus an action of which this Court has original jurisdiction under 28 U.S.C. § 1337;

3. That it is an action arising out of breach of contract for labor relations between employer in interstate and foreign commerce and a recognized bargaining representative for its employees, and that consequently original jurisdiction is conferred by the Labor-Management Relations Act, § 301(a), 29 U.S.C.A. § 185(a).

Petitioner moved to remand, contending that the case did not arise under any laws of the United States, but only under general law of tort and contract of the Territory and that therefore this Court would not have jurisdiction.

## I. Removability of Actions in General.

■ The basis for removal of actions in general is stated in 28 U.S.C. § 1441. It provides that removable actions include those brought in a State court of which the District Courts of the United States have original jurisdiction; and that any civil action of which the District Courts have original jurisdiction founded on a claim or right arising under the Constitution, laws or treaties of the United States shall be removable without regard to citizenship or residence of the parties.

Thus the removability of this cause depends upon determination of the existence of original jurisdiction over the subject matter in the District Court. This may exist because the petitioner claims the enforcement of a right arising under federal law, as expressly provided in 28 U.S.C. § 1331 generally, and extended to actions arising under Acts of Congress regulating commerce or protecting it against restraints and monopolies by 28 U.S.C. § 1336. If the claim is not found to arise under federal law, there may still be original jurisdiction because of the nature of the case as being within the exclusive purview of the federal courts, or because original jurisdiction has been expressly conferred by Congress on the basis of the status of the parties. As an example of the latter case, diversity of citizenship often serves, and it appears that some degree of original jurisdiction is granted by the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a), on the theory of status.

■■ Where the basis is a claim or right arising under federal law, it must appear, obviously, that the plaintiff is asserting this sort of a right. The complaint is the sole source of information, to be taken unaided by answers or defenses, as to whether federal law is in fact the basis of the complaint. Gully v. First Nat. Bank, 1936, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70.

■■ In the case before us, the contents of the complaint suggesting that federal law might be the foundation of the claim are the allegations of the status of the parties as that of an employer in interstate and foreign commerce in controversy with a bargaining unit for his employees, together with a contract for collective bargaining as the source of the complaint. This allegation of status, without more, does not serve to outline any claim which depends for its existence upon federal law. Nor does it preclude consideration of the complaint as a traditional bill in equity for protection of a contract against the acts of the promisor and of third parties, seeking to destroy it. This is true, although the Court will take judicial notice of any federal laws necessarily brought into operation by the allegations of the complaint. Pocahontas Terminal Corp. v. Portland, etc. Council, D.C.Me.S.D.1950, 93 F.Supp. 217.

## II. Nature of the Field as Exclusively Federal.

■ Some point is made in argument, citing Fay v. American Cystoscope Makers, D.C.S.D.N.Y.1951, 98 F.Supp. 278, that this

is a field which Congress has fully occupied under its power to regulate interstate commerce, thus making the remedy exclusively federal in nature. Such occupation is said to have been done by means of Section 301 (a) of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185(a). This section provides:

"Suits for violation of contracts between an employer and a labor organization representing [its] employees in an industry affecting commerce as defined in this chapter, * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

The Court in the Fay case denied a motion for remand by the defendant employer, saying that this type of case does not arise as a claim under federal law, but is one in which federal jurisdiction depends on the status of the parties; where this is the basis for jurisdiction, the Court may look outside the complaint to determine this status, and thus its jurisdiction. The Court continued that the above section created a new federal substantive right, that Congress pre-empted the field in this area, and that the plaintiff cannot compel the defendant to litigate the matter in State courts because no State cause of action on the contract remains. The report does not state, however, whether that case was one on a money demand, or for injunction.

■■■ The instant case is one in which jurisdiction for removal depends upon the status of the parties, as in the Fay case and as outlined in the quoted statute, supra. But if the field were to be held one of exclusive federal power, Congress surely would have so stated, instead of using such permissive words as "may be brought", when writing Section 185(a). Further, if the field is one of exclusive federal jurisdiction, the State Courts have none; the principle of derivative jurisdiction in removal would thus leave nothing to be removed from the State (or Territorial) Court.

However unlimited the power of Congress to occupy the field of legislation in interstate commerce, it does not follow that it limits the field of adjudication to federal courts without making clear its intent to do so. Therefore, it appears that this is not now a field reserved exclusively to federal courts, and removability cannot be established on this basis.

### III. Is Original Jurisdiction Conferred by the Labor-Management Relations Act of 1947?

Section 301(a) of the Labor-Management Relations Act, 29 U.S.C.A. § 185(a), contains rather general language which on its face would authorize District Courts to hear any and all cases arising out of violations of labor relations contracts involving an industry affecting commerce, as defined in that Act. The Act, however, does not repeal the provisions of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., limiting the use of injunctions in labor cases, nor does it enlarge the class of cases over which District Courts were given jurisdiction. Matson Nav. Co. v. Seafarers International Union, D.C.Md.1951, 100 F. Supp. 730. Nor are the rules of section 4 of the Norris-LaGuardia Act, 29 U.S.C.A. § 104, relative to anti-labor injunctions changed by the Act of 1947. Alcoa S. S. Co. v. McMahon, D.C.S.D.N.Y.1948, 81 F.Supp. 541, affirmed, 2 Cir., 173 F.2d 567, certiorari denied 338 U.S. 821, 70 S.Ct. 65, 94 L.Ed. 498. Under section 104 of the Norris-LaGuardia Act, United States District Courts may not issue injunctions to prohibit persons interested in labor disputes from doing, singly or in concert, any of certain specified acts, including "Ceasing * * * to perform any work or to remain in any relation of employment; * * Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute; * * * and Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any [agreement not to join a labor union]". These actions may reasonably be considered within the scope of the injunction demanded by petitioner, through the contract not to strike during the term of the contract. If so, the new Section 185(a) of 29 U.S.C.A. is not so clear and unequivocal as it seems on

its face, since we then have the absurdity of a case which "may be brought" in a federal District Court in which there is no power to give the relief demanded, due to surviving prior limitations. Thus the question raised by petitioner as to whether Congress intended to deal with injunction suits when writing this section has some foundation. Further doubt arises from the fact that there is no mention of injunction suits in Sec. 185, whereas there is mention in subsection (b) of sole liability of the labor organization in case of money judgments against it. Support for this argument also is found in the express removal of restrictions as to the amount in controversy by subsection (a) supra, implying a money demand as against a restraining order.

 The primary rule of construction of statutes is that the legislative intent is the controlling factor; this intent itself constitutes the law. United States v. N. E. Rosenblum Truck Lines, 1942, 315 U.S. 50, 62 S.Ct. 445, 86 L.Ed. 671. See Jones v. Guaranty & Indemnity Co., 1879, 101 U.S. 622, 25 L.Ed. 1030; 50 Am.Jur. p. 200. Where the language of a statute is ambiguous, and doubt of its proper meaning exists, committee reports of the legislature concerned may be considered. Wright v. Vinton Branch, 1937, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455. Statements of the author of a bill have been held proper for consideration as showing the conditions or history of the period when the statute in question was enacted, or the mischief it was intended to remedy, and thus as indicating its proper interpretation. See Jennison v. Kirk, 98 U.S. 453, 25 L.Ed. 240. Reference to the comments of Senator Taft during legislative hearings on the section here involved reveals that the discussion about this section revolved around the desire to prevent disastrous results to individual members from collection of money judgments against the union, through liability as members of an unincorporated association. At the same time, the desire appears to provide for mutuality of financial responsibility for performance of collective bargaining contracts made between management and the unions. 93 Daily Congressional Record, 3950, April 23, 1947; 2 Legislative History of the Labor-Management Relations Act, U. S. Government Printing Office, 1948, page 1014.

The same thought appears in other references to Senate hearings (reference to money judgments) in the comments of Senator Smith, 93 Daily Congressional Record p. 4387 et seq., Apr. 30, 1947; 2 Legislative History of the Labor-Management Relations Act, U. S. Government Printing Office, 1948, pp. 1145, 1146, and of Senator Ball, 93 Daily Congressional Record, 5146, 5147, May 12, 13, 1947; 2 Legislative History of the Labor-Management Relations Act, U. S. Government Printing Office, 1948, p. 1497.

 The conclusion is that Congress, by way of Sec. 185(a) of 29 U.S.C.A. did not intend to change or remove the existing limitations on jurisdiction imposed by the Norris-LaGuardia Act to permit District Courts to hear injunction cases against labor organizations, even though they should arise out of violations of labor relations contracts. It appears, therefore, that the case was removed improvidently and without jurisdiction, and the petition for remand is granted, in accordance with 28 U.S.C. § 1447(c).