SANDSBERRY et al. v. GULF, C. & S. F. RY. CO. et al.

Civ. A. No. 1611.

United States District Court
N. D. Texas, Amarillo Division.

July 31, 1953.

Simpson, Clayton & Fullingim, Amarillo, Tex., for plaintiffs.

J. C. Gibson, R. S. Outlaw, and William J. Milroy, Chicago, Ill., Adkins, Folley, Adkins, McConnell & Hankins, Amarillo, Tex., Wigley, McLeod, Mills & Shirley, Galveston, Tex., Lewis Jeffrey, Amarillo, Tex., for defendant railroads.

Mullinax & Wells, Dallas, Tex., Schoene & Kramer, and Mulholland, Robie & Hickey, Washington, D. C., for union defendants.

DOOLEY, District Judge.

The plaintiffs, natural persons of Texas, being three employees of Atchison, Topeka and Santa Fe Railway Company and eleven employees of the Panhandle and Santa Fe Railway Company, all save one nonunion employees, brought this suit in a district court of Texas against the said two companies and Gulf, Colorado and Santa Fe Railway Company, as well as sixteen labor

unions or associations and numerous natural persons sued both individually and as local, division, system and general representatives of said unions and associations respectively, alleging that the nonunion plaintiffs had attained certain seniority respectively, wished to continue at work in said employment, but were unwilling to join and become liable for the dues, assessments, and other charges as a member of some one or another of the defendant unions, and that their employment security and right to work were in jeopardy by the fact that negotiations of collective bargaining were imminent between the defendant railroads and the defendant unions in which the said unions would demand from the railroads a union shop contract, with a threat of strike otherwise, and that confronted with the pressure of such an alternative the railroads, though disinclined, would be coerced into such a contract, and that the nonunion plaintiffs, in spite of their natural right of freedom to work, as further guaranteed by the Texas Right to Work Law [1], would be wrongfully forced to quit their employment or else against their will join some one of the defendant unions, all in violation of their legal and constitutional rights, and the prayer was for a temporary restraining order enjoining the railroad defendants from signing such a union shop contract and the labor unions, their officers and representatives, from demanding the contract and from attempting to force the railroad defendants to sign said contract by the means of any slow-down, work stoppage, local or national strike, or any other concerted activity, and that said restraining order, after notice, be superseded by a temporary injunction, and later by a permanent injunction upon final trial.

The plaintiffs in their petition also took anticipatory notice of the 1951 Amendment of the Railway Labor Act, now reflected in Title 45 U.S.C.A. § 152 being new paragraph Eleventh thereof, as sufficiently copied in the margin [2], but this was done

1. Art. 5207a of Vernon's Annotated Civil Statutes of Texas of 1925:

"Section 1. The inherent right of a person to work and bargain freely with his employer, individually or collectively, for terms and conditions of his employment shall not be denied or infringed by law, or by any organization of whatever nature.

"Sec. 2. No person shall be denied employment on account of membership or nonmembership in a labor union.

"Sec. 3. Any contract which requires or prescribes that employees or applicants for employment in order to work for an employer shall or shall not be or remain members of a labor union, shall be null and void and against public policy. The provisions of this Section shall not apply to any contract or contracts heretofore executed but shall apply to any renewal or extension of any existing contract and to any new agreement or contract executed after the effective date of this Act."

The constitutionality of said law is no longer an open question. Local Union No. 10 United Association of Journeymen Plumbers & Steamfitters v. Graham, 345 U.S. 192, 73 S.Ct. 585; Lincoln Federal Labor Union v. Northwestern Iron & Metal Co., 335 U.S. 525, 533, 69 S.Ct. 251, 93 L.Ed. 212.

2. "Notwithstanding any other provisions of this chapter, or of any other statute or law of the United States, or Territory thereof, or of any State, any carrier or carriers as defined in this chapter and a labor organization or labor organizations duly designated and authorized to represent employees in accordance with the requirements of this chapter shall be permitted—

"(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class: Provided, That no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership."

only to point out at the outset the plaintiffs' counts against the constitutional validity of said statutory amendment.

The defendant railroads made no contest of plaintiffs' suit by their answer in the State court, but by cross-claim against the same labor unions and associations and some of the same individual representatives of said unions named in the plaintiffs' petition, and also a number of additional individual representatives thereof, alleged the course of some collective bargaining negotiations between representatives of the defendant unions and certain railroads, including the defendant railroads, initiated on February 5, 1951, marked on July 1, 1952 by a demand of the unions for a blanket union shop agreement with all of the said railroads as a group, which was rejected, and that said unions then undertook to deal separately with the railroads, and on May 5, 1953 in a meeting between representatives of the defendant unions and the defendant railroads the unions renewed the demand for a union shop contract, being a contractual provision that as a condition of continued employment the employees of the defendant railroads would be compelled to become members of some one or another of the unions by craft classification, regardless of their own rights, desires or convictions, and that the railroads being disinclined to yield to said demands, the unions then threatened a strike, and upon information and belief that but for the restraining order entered herein by the State court the unions would have forced the railroads to sign said proposed contract, or would have immediately carried out their threat by calling a strike against the railroads, and that such purposes are fraught with irreparable damage to the railroads, and the prayer of said cross-claim sought injunctive relief substantially similar to that prayed for by the plaintiffs against the defendant unions and individual representatives of the unions respectively, and in addition the railroads also prayed for a declaratory judgment pertaining to the Texas

Right to Work Law and certain other statutes of Texas.

Certain injunctive orders were issued in this case by the State court.

In due time all of the defendants and cross-defendants, except the railroad defendants, filed a petition for removal of this cause from the State court to the Federal court, resting on the theory that this is an action of a civil nature, with the amount in dispute exceeding $3,000, exclusive of interest and costs, of which the district courts of the United States have original jurisdiction, and arises under the Constitution and laws of the United States, and moreover that it arises under an Act of Congress regulating commerce between the states, namely, the Railway Labor Act, so that same is removable in each of said aspects under the terms of the removal statute.[3]

The plaintiffs on their part and the defendant railroads on their part respectively, duly filed their separate motions to remand this suit to the State court.

■ The question of when a case arises under the laws or Constitution of the United States has been dealt with in a multitude of decisions in the lower Federal courts as well as the Supreme Court. Originally the courts did not use so strict a test, but in the last 75 years, along with the policy of constricting Federal jurisdiction, the courts have taken a more exacting attitude. Justice Holmes has said tersely, "A suit arises under the law that creates the cause of action." American Well Works Company v. Layne & Bowler Company, 241 U.S. 257, 36 S.Ct. 585, 586, 60 L.Ed. 987. Very much depends on the cast of the allegations in the complaint. "Of course, the party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under' the * * * law of the United States by his declaration or bill. That question cannot depend upon the answer, and accordingly jurisdiction cannot be con-

---

3. Title 28, U.S.C. § 1441(b):
   "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

ferred by the defense, even when anticipated and replied to in the bill." The Fair v. Kohler Die & Specialty Company, 228 U.S. 22, 33 S.Ct. 410, 411, 57 L.Ed. 716. The determinative allegations however must be clear, distinct and positive, not simply enough to raise inferences argumentatively [4], so it follows that a mere formal statement that such question exists will not suffice [5], and likewise mere references to the Federal Constitution, laws or treaties are not adequate to disclose such a case [6], but instead the pleadings must spell out a claim integrated with a Federal statute or the Constitution.[7] The alleged cause of action put in suit must be claimed under a Federal statute or the Constitution.[8] The leading case by common recognition on the subject under discussion is Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70, and there the Supreme Court thoroughly analyzed the decisions and expounded the criteria in a definitive way, and in synopsis version the holding is that a case to arise under the laws and Constitution of the United States must disclose such nature of the suit upon the face of the complaint, unaided by the answer or the petition for removal, and a genuine and present controversy, not merely a possible or conjectural one, must exist with reference to said laws or constitution, and a right or immunity created by such laws or constitution must 'be an element, and an essential one, of the cause of action, which will be supported if said laws and constitution are given one construction or effect, and defeated if there is a different construction. Some of the other principal decisions of the Supreme Court defining the tests of a case arising under the laws or Constitution of the United States are noted below.[9]

■■ Now the standing of the present case will be examined. The plaintiffs' suit primarily rests on the natural right to work as buttressed by the Texas Right to Work Law. The removing defendants, however, strenuously argue that the plaintiffs under some dispersed allegations in the complaint rely on the protection of the guarantees in the Constitution of the United States, and in that way make their suit one arising under such Constitution. Of course it must be remembered that, "The question whether a party claims a right under the constitution or laws of the United States is to be ascertained by the legal construction of its own allegations, and not by the effect attributed to those allegations by the adverse party." Central Railroad Company of New Jersey v. Mills, 113 U.S. 249, 5 S.Ct. 456, 459, 28 L.Ed. 949. Some of the allegations pointed out by the removing defendants are no more than mere undefined references

4. Hanford v. Davies, 163 U.S. 273, 16 S. Ct. 1051, 41 L.Ed. 157.

5. South Covington & Cincinnati Street Railway Co. v. City of Newport, 259 U.S. 97, 42 S.Ct. 418, 66 L.Ed. 842.

6. McCartney v. State of West Virginia, 4 Cir., 156 F.2d 739.

7. Little York Gold Washing & Water Company, Ltd. v. Keyes, 96 U.S. 199, 24 L.Ed. 656.

8. People of Puerto Rico v. Russell & Co., 288 U.S. 476, 53 S.Ct. 447, 449, 77 L.Ed. 903.

"Federal jurisdiction may be invoked to vindicate a right or privilege claimed under a federal statute. It may not be invoked where the right asserted is non-federal, merely because the plaintiff's right to sue is derived from federal law, or because the property involved was obtained under federal statute. The federal nature of the right to be established is decisive—not the source of the authority to establish it."

9. Metcalf v. City of Watertown, 128 U. S. 586, 9 S.Ct. 173, 32 L.Ed. 543; Shulthis v. McDougal, 225 U.S. 561, 32 S. Ct. 704, 56 L.Ed. 1205; Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L. Ed. 1218; Hull v. Burr, 234 U.S. 712, 34 S.Ct. 892, 58 L.Ed. 1557; Arbuckle v. Blackburn, 191 U.S. 405, 24 S.Ct. 148, 48 L.Ed. 239; State of Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; City of New Orleans v. Benjamin, 153 U.S. 411, 14 S.Ct. 905, 38 L.Ed. 764; Chappell v. Waterworth, 155 U.S. 102, 15 S.Ct. 34, 39 L.Ed. 85; First National Bank of Canton, Pennsylvania v. Williams, 252 U.S. 504, 40 S.Ct. 372, 64 L.Ed. 690; National Mutual Insurance Co. v. Tidewater Transfer Co., 337 U.S. 582, 597, 69 S.Ct. 1173, 93 L.Ed. 1556; Skelly Oil Co. v. Phillips Petroleum Co., 339 U. S. 667, 70 S.Ct. 876, 94 L.Ed. 1194.

to the laws and Constitution of the United States, and the only one definite enough to merit further attention states that the inevitable result of a union shop contract will be to confiscate plaintiffs' property rights and impair their contracts of employment "all of which will be without due process of law guaranteed to the plaintiffs and each of them by the Federal Constitution". The removing defendants argue that this allegation is unrelated to the 1951 Amendment to the Railway Labor Act and that "they are relying directly on their own alleged rights under the Federal Constitution as a ground for enjoining the agreement", so that "in this respect plaintiffs are basing their own cause of action on the Federal Constitution". The fallacy in this argument is that unless the said 1951 Amendment is the real target of the plaintiffs' aforesaid allegations, then so far as the plaintiffs claim that independently of such Federal statute the execution and enforcement of a union shop agreement will damage their property rights contrary to the Federal Constitution, the purported Federal right is insubstantial in law. This is true for the reason that the Fifth and Fourteenth Amendments to the Federal Constitution, apart from the impact of some State or Federal statute or other governmental element, provide no armor in conflicts between private litigants. In other words, the present plaintiffs cannot summon the protection of the guarantee against despoilment without due process of law under the Fifth Amendment to the Constitution, unless it may be that such claim can be sustained on the theory that the defendants lean on the aid and authority of the aforesaid 1951 Amendment to the statute in dealing with the pending question of a union shop agreement, and that said statute is unconstitutional. The Court of Appeals for this Circuit has spoken in a recent case as follows:

"Where neither the constitutional provision nor any act of Congress affords a remedy to any person, the mere assertion by a plaintiff that he is entitled to such a remedy cannot be said to satisfy federal jurisdictional requirements. The effect of holding, as the court below did, that jurisdiction was conferred by the pleader's assertion that it was entitled to a remedy under the Fourteenth Amendment was to transfer to the federal court the trial of a cause of action which arose wholly under state law. * * *

"The Fifth and Fourteenth Amendments did not create any new rights to life, liberty, or due process of law. These rights had existed for Englishmen since Magna Charta. The Declaration of Independence and the Revolution of 1776 merely declared and established these rights for the American Colonies. The Tenth Amendment reserved them to the people of the newly created states; the Fifth Amendment protected them from molestation by the newly created federal government; and the Fourteenth Amendment safe-guarded them from violation by the several states of the re-welded union. * * * They are protected by the federal constitution from violations by the state or federal governments, but not from individual trespasses except for violations of a federal statute enacted in pursuance of the federal constitution. In the instant case, no federal statute is relied upon by the appellee, and no state or federal action is alleged to have threatened to take or injure its property." Screven County v. Brier Creek Hunting & Fishing Club, 5 Cir., 202 F.2d 369, 371.

Many decisions sustain the familiar rule that jurisdiction in the national courts cannot be sustained by merely alleging an insubstantial Federal question.[10] Furthermore, as a state of doubt is relevant in dealing with a motion to remand, it may be said that fair doubt attends the effort of plaintiffs to find a substantial opening under the Federal Constitution in the light of some more or less analogous decisions of the Su-

10. Arbuckle v. Blackburn, 191 U.S. 405, 24 S.Ct. 148, 48 L.Ed. 239; Hull v. Burr, 234 U.S. 712, 34 S.Ct. 892, 58 L.Ed. 1557; Cuyahoga River Power Co. v. Northern Ohio Traction & Light Co., 252 U.S. 388, 40 S.Ct. 404, 64 L.Ed. 626; City of New Orleans v. Benjamin, 153 U. S. 411, 14 S.Ct. 905, 38 L.Ed. 764.

preme Court.[11] In fact for many years the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and the present Labor Management Relations Act have passively countenanced in a process of collective bargaining the negotiation at first of a closed shop and afterwards of a union shop, without being halted in court by any constitutional impediment.

The removing defendants also argue adroitly that the reference in the complaint to the 1951 Amendment demonstrates that this necessarily is a suit of Federal jurisdiction.[12] That position is in the teeth of the well settled law declared in the many cases already reviewed in this opinion, and more particularly conflicts with other decisions of the Supreme Court next mentioned. Perhaps the particular case closest in objective pattern to this suit is Louisville & Nashville Railroad Company v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 43, 53 L.Ed. 126. In 1871 Mottley and wife were injured while passengers on the railroad, and in a contract with the company settled all claims for damages in consideration for travel passes to be issued all during their lives, and this agreement was performed by the railroad until 1907, when it declined to issue any more passes to them and they then filed a suit for specific performance, alleging said facts, and also additionally that the railroad's said refusal was based on an Act of Congress enacted in 1906, 34 Stat. 584, which prohibited the issuance of free passes, and in that connection asserted, first, that said Act did not apply under the

circumstances of their deal, and, second, that if the law did apply it was in conflict with the Fifth Amendment to the Constitution, because it deprived the plaintiffs of their property without due process of law. The pertinent part of the decision reads as follows:

"There was no diversity of citizenship, and it is not and cannot be suggested that there was any ground of jurisdiction, except that the case was a 'suit * * * arising under the Constitution or laws of the United States.' * * * It is the settled interpretation of these words, as used in this statute, conferring jurisdiction, that a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States. Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution."

That case, though somewhat unusual in the particular way the question took form, is well supported in other decisions of the Court.[13]

Of course it is easily predictable, although the removing defendants have not

11. Senn v. Tile Layers Protective Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229; International Brotherhood of Teamsters, etc. Union v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855.

12. "Plaintiffs have sought to confuse the true purpose of their action by referring to so-called 'natural' rights and rights under the Texas Right to Work Law. But the obvious fact is that the 1951 Amendment to the Railway Labor Act was intended to supersede all natural or state laws on the subject. Thus, the only possible question in the case is whether the federal statute is applicable and constitutional. And by the same token, the only possible purpose of plain-

tiffs' action is to have the federal statute declared unconstitutional. All references to rights under the natural law or state statute should, therefore, be immediately disregarded as frivolous. And the case should be treated for what it really is—an attack upon the constitutionality of the federal statute on the ground that it deprives plaintiffs of rights guaranteed them by the Federal Constitution."

13. Sawyer v. Kochersperger, 170 U.S. 303, 18 S.Ct. 946, 42 L.Ed. 1046; State of Arkansas v. Kansas & Texas Coal Company, 183 U.S. 185, 22 S.Ct. 46, 46 L.Ed. 144; The Fair v. Kohler Die & Specialty Company, 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716.

yet answered, that the 1951 Amendment will be confronted in the determinations made during the course of this litigation, but clearly that is not enough to predicate Federal jurisdiction. Even if it were a certainty that the plaintiffs' suit must ultimately founder on the rock of said Amendment that still would not affect the question of jurisdiction. "But even assuming that the bill showed upon its face that the relief sought would be inconsistent with the power to regulate commerce, or with regulations established by Congress, or with the 14th Amendment, as contended, it would only demonstrate that the bill could not be maintained at all, and not that the cause of action arose under the Constitution or laws of the United States." State of Arkansas v. Kansas & Texas Coal Company, 183 U.S. 185, 22 S.Ct. 47, 49, 46 L.Ed. 144.

The railroad defendants make the point that, since the plaintiffs and said defendants in their petition and cross-claim are primarily seeking injunctive relief in a labor dispute, Federal jurisdiction is forestalled by the restrictions in the Norris-LaGuardia Act.[14] No one denies that the core of this litigation is a labor dispute within the meaning of that law. The plaintiffs and the railroad defendants are pursuing the objective of injunctive process to block certain threatened action linked with said labor dispute. Obviously the power of this court in the litigation, there being no charge of fraud or violence attending said labor dispute, is under the ban prescribed in that Act.[15]

The removal statute in all good sense must presuppose a subject matter within the jurisdiction of the Federal

14. Title 29, U.S.C.A. §§ 104 and 105.
"§ 104. *Enumeration of specific acts not subject to restraining orders or injunctions*

"No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growout out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

"(a) Ceasing or refusing to perform any work or to remain in any relation of employment;

"(b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this title;

\*   \*   \*   \*   \*

"(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

"(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;

\*   \*   \*   \*   \*

"(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and

"(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title."

"§ 105. *Doing in concert of certain acts as constituting unlawful combination of conspiracy subjecting person to injunctive remedies*

"No court of the United States shall have jurisdiction to issue a restraining order or temporary or permanent injunction upon the ground that any of the persons participating or interested in a labor dispute constitute or are engaged in an unlawful combination or conspiracy because of the doing in concert of the acts enumerated in section 104 of this title."

15. Milk Wagon Drivers' Union v. Lake Valley Farm Products, Inc., 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63; Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; New Negro Alliance v. Sanitary Grocery Company, 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012; Wilson & Co. v. Birl, D.C., 27 F.Supp. 915, affirmed, 3 Cir., 105 F.2d 948; Donnelly Garment Co. v. Dubinsky, 8 Cir., 154 F.2d 38; United States v. American Federation of Musicians, D.C., 47 F.Supp. 304, affirmed 318 U.S. 741, 63 S.Ct. 665, 87 L.Ed. 1120; Brown v. Coumanis, 5 Cir., 135 F.2d 163, 146 A.L.R. 1241; East Texas Motor Freight Lines v. International Brotherhood of Teamsters, 5 Cir., 163 F.2d 10; J. J. Newberry Co. v. Retail Clerks' Union Local 655, D.C., 67 F.Supp. 86.

Court. It is an incongruous thing to talk about transferring a lawsuit from a State court of adequate jurisdiction to a Federal court bereft of jurisdiction to deal with the very substance of the litigation. This lawsuit, within the intent of the removal statute, cannot rationally fit the description of a "civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States" in the face of the truncated jurisdiction of this court.[16] The above conclusion is somewhat fortified by analogy under a Supreme Court decision dealing with the Railway Labor Act. "We are here concerned solely with legal rights under this federal Act which are enforcible by courts. For unless such a right is found it is apparent that this is not a suit or proceeding 'arising under any law regulating commerce' over which the District Court had original jurisdiction by reason of § 24(8) of the Judicial Code, 28 U.S.C. § 41(8), 28 U.S.C.A. § 41(8). * * * When a court has jurisdiction it has of course 'authority to decide the case either way.' * * * But in this case no declaratory decree should have been entered for the benefit of any of the parties. Any decision on the merits would involve the granting of judicial remedies which Congress chose not to confer." General Committee of Adjustment of the Brotherhood of Locomotive Engineers for the Missouri-Kansas-Texas Railroad v. Missouri-Kansas-Texas Railroad Co., 320 U.S. 323, 64 S.Ct. 146, 153, 88 L.Ed. 76. In this connection the removing defendants rely stoutly on the case of Pocahontas Terminal Corporation v. Portland Building & Construction Trade Council, D.C., 93 F.Supp. 217, 225. The clue to a distinction may be found in the Court's remark: "It should be noted that the Norris-LaGuardia Act does not take away the previously exercised power and jurisdiction of a United States District Court to enjoin picketing involving fraud or violence", somewhat an implication that such practices may have cropped out in the activities under question, although not mentioned elsewhere in the opinion, but unless so distinguishable then this court differs with said decision.

Naturally one might well think it surprising at first that Federal courts would be so guarded about jurisdiction even in cases where it is evident a question of federal law will demand solution, but particularly in removal cases there is a fundamental question of governmental policy at stake, and the spirit of it is grasped quite trenchantly in the words of Chief Justice Fuller: "Litigation in the state courts cannot be dragged into the Federal courts at such a stage and in such a way. The proposition is wholly untenable that, before the state courts in which a case is properly pending can proceed to adjudication in the regular and orderly administration of justice, the courts of the United States can be called on to interpose on the ground that the state courts might so decide as to render their final action unconstitutional." Defiance Water Co. v. City of Defiance, 191 U.S. 184, 24 S.Ct. 63, 67, 48 L.Ed. 140.

The respective motions to remand are sustained on the two respective general and special grounds herein discussed, and it is unnecessary to discuss other questions raised in the briefs of counsel.

16. Berrios v. Bull Insular Line Co., D.C., 109 F.Supp. 858; Home Building Corporation v. Carpenters District Council, D. C., 53 F.Supp. 804; Castle & Cooke Terminals v. Local 137 of International Longshoremens' and Warehousemens' Union, D.C., 110 F.Supp. 247; Walker v. United Mine Workers, D.C., 105 F. Supp. 608; American Optical Co. v. Andert, D.C., 108 F.Supp. 252; Cates v. Allen, 149 U.S. 451, 13 S.Ct. 977, 37 L. Ed. 804.